Statement of Facts.

# MENDOCINO COUNTY *v.* JOHN W. MORRIS *et als.*

COMPLAINT ON OFFICIAL BOND.—If the complaint on an official bond in a suit against the principal and his sureties avers the execution of the same by both principal and sureties, and a copy of the bond is annexed to the complaint which does not contain the signature of the principal, the complaint is good unless demurred to specially for being ambiguous in this respect.

EXECUTION OF OFFICIAL BOND.—If the complaint on an official bond avers the due execution of the same by both principal and sureties, and the answer takes issue on the averment, and verdict and judgment are for plaintiff, the judgment will not be disturbed on appeal upon the judgment roll on the ground that what purports to be a copy of the bond annexed to the complaint does not contain the signature of the principal.

PLAINTIFF IN SUIT ON OFFICIAL BOND.—If the complaint on the official bond of a County Treasurer avers that the money for which the Treasurer is in default belongs to the county, the action is properly brought in the name of the county.

APPROVAL OF OFFICIAL BOND.—The official bond of a County Treasurer is not invalidated because approved by the County Judge instead of the Board of Supervisors.

BREACH OF OFFICIAL BOND.—An averment in a complaint on a County Treasurer's official bond that he received money belonging to the county and retains it, and refuses to deliver it to his successor in office, is a sufficient averment of a breach of its conditions.

JUDGMENT ON BOND.—In an action against the principal and his sureties on an official bond, if the bond contains no promise to pay in coin, judgment can only be rendered payable in money generally. This rule applies to the principal as well as sureties.

TRANSCRIPT ON APPEAL.—A copy of the minutes of the Court, as kept by the Clerk during the progress of the trial, should not be inserted in a transcript on appeal.

APPEAL from the District Court, Seventh Judicial District, Mendocino County.

The bond sued on was joint and several. The plaintiff averred in the complaint that John W. Morris was Treasurer of Mendocino County from the 7th day of March, 1864, until the 5th day of March, 1866, and that he received as Treasurer, for the use and benefit of the county, in gold coin, fifteen thousand dollars, which was the property of the county, which sum he had unlawfully in his possession, and that he had refused to deliver it to his successor in office, although he had often been requested to do so. Plaintiff had judgment against

19

both principal and sureties, payable in gold coin.    Defendants appealed.

The other facts are stated in the opinion of the Court.

*George Cadwalader*, for Appellant.

The bond set out in the complaint, while signed by the sureties, was not signed by the principal, John W. Morris, and is, therefore, void.    No difference can be detected between the bond in this case and the one subject to review by this Court in the case of the *People* v. *Hartley*, 21 Cal. 585, wherein Mr. Chief Justice Field said : " Being a joint bond, the signature of the principal was essential to its validity and binding force upon the sureties.    As we said of the law in the case of the *City of Sacramento* v. *Dunlap*, 14 Cal. 423, so we may say of this.    The liability of the sureties is conditional to that of the principal.    They are bound if he is bound, and not otherwise. The very nature of the contract implies this."    (17 Mass. 591 ; 2 Pick. 24 ; 4 Watts, 21 ; 11 Vermont, 447 ; 9 Texas, 1 ; *People* v. *Breyfogle*, 17 Cal. 509.)    It was approved by the County Judge, who had no jurisdiction.    (*People* v. *Evans*, 29 Cal. 429.)    This, unaided, is a vital defect.    (Sections 2, 3, and 4, Act of July 28th, 1850 ; Hittell's Digest, 445.)    Section eleven of the same Act provides that such defects may be cured —by suggestions of the same in the complaint—which was not done in this cause, and therefore the bond is void.    (6 Cal. 639 ; 9 Cal. 286 ; 21 Cal. 585.)

*J. G. McCullough, Attorney-General,* for the Respondent.

Appellants cannot raise for the first time in this Court the objection that the bond was not signed by the principal, J. W. Morris.    The complaint says that it was, and if it had been denied, it was a question of fact to be determined by the evidence.    It was not necessary for the complaint or copy of the bond attached thereto to set out any of the names subscribed, but simply to set forth the body of the instrument, and allege (as it does) that J. W. Morris made, executed, and

delivered it.   For aught this Court may know, the original is subscribed by Morris and his name omitted in the copy through mistake.   (10 Cal. 347.)   A very clear and apparent difference can be detected between this bond and the one in the case of the *People* v. *Hartley*, 21 Cal. 585.   The words "jointly and severally firmly by these presents" are contained in this bond, and were omitted in the other.   These words create a *joint and several* liability.   (*People* v. *Love*, 25 Cal. 530; *People* v. *Evans*, 29 Cal. 429.)   In the case of the *People* v. *Edwards*, 9 Cal. 292, this Court said: "The defect in the approval of the bond could not avail the defendants.   The object of requiring the approval is to insure greater security to the public, and it does not lie in the defendants to object that their bond was accepted without proper examination into its sufficiency by the officers of the law."   (9 Cal. 292; 17 Cal. 503, 509; 13 Cal. 502; *People* v. *Evans*, 29 Cal. 429.)


By the Court, SAWYER, J. :

This action is against the principal and his sureties on the official bond of the County Treasurer of Mendocino County. The appeal is from the judgment, and there being no statement or bill of exceptions, the only questions presented arise on the judgment roll.   There was no error in overruling the demurrer to the complaint.   A copy of the bond purports to be annexed to the complaint as Schedule A.   Said copy does not contain the signature of Morris, the principal.   It is claimed that there is no cause of action shown against Morris for the want of his signature, and that, for the same reason, the bond is void as to the sureties.   It is unnecessary, however, to determine the effect of the failure of the principal to execute the bond.   The complaint distinctly avers the execution of the bond by all the defendants.   The defendants, in their answer, have taken issue upon the averments, and the verdict is in favor of the plaintiff on the issues.   It must be presumed that the omission of the name of the principal in the copy appended to the complaint is a clerical error.   Upon

the demurrer, in the form adopted in this case, the direct averment of the execution of the bond in the body of the complaint must prevail, as against the omission of the signature in the copy appended. It may be that there is a want of correspondence between the averment in the body of the complaint and the copy annexed, but if so, the most that can be said is, that the complaint is ambiguous in this. respect, and this objection was not specified as a ground of the demurrer under any head. The grounds of the demurrer relied on were all particularly specified, and this is not one of them. The objection is raised for the first time in this Court. The demurrer is not general, that the complaint does not state facts sufficient to constitute a cause of action, but, that it does not state facts sufficient to constitute a cause of action in certain specified particulars. There was a good averment of the execution of the bond in the body of the complaint, and no objection appears to have been taken in the Court below on the ground of want of correspondence between the bond set out and the averment, and we think the complaint good, at least after verdict. Had the objection been taken in the Court below, the clerical omission of the signature of the principal in the copy, if it be one, might have been corrected.

The facts set forth, we think show, a breach of the condition of the bond and a cause of action. The moneys for which the Treasurer is in default are alleged to belong to the County of Mendocino, and the action is properly brought in the name of the county. The fact that the bond was approved by the County Judge, instead of the Board of Supervisors, is no defense to the action. The liability of the sureties does not depend upon the approval of the bond by the proper officers. (*People* v. *Edwards*, 9 Cal. 286; *People* v. *Evans*, 29 Cal. 436.) Besides, although the bond appears to have been approved by the County Judge, there is nothing in the record to show that it was not also approved by the Board of Supervisors. No question of this kind appears to have been raised in the Court below.

The action is on the bond for damages resulting from a

breach of its conditions.   The bond contains no covenant to pay in coin.   The judgment for coin, as to the sureties, is erroneous for reasons stated in the case of *Fox* v. *Minor*, *ante*, 111.

It may be that a judgment for coin could be recovered against the principal in a proper suit for the moneys received by him in his fiduciary capacity; but this is not an action of that kind.   Morris is sued with his sureties as one of the obligors on the bond only.   The bond alone is the basis on which the action rests; and, in a suit upon the bond, all the parties stand upon the same footing, and are entitled to rest on the terms of the undertaking.   The only recovery that can be had on the bond is the damages resulting from the failure of Morris to discharge his duties in the mode prescribed by law; and the damages can only be required to be paid in money generally, according to the terms of the bond.   We observe that, in some cases brought before us, the officers approving official bonds have required them to be made payable in coin.   This practice seems to be a safe precaution.

All that portion of the transcript after folio sixty-nine, except the notice of appeal, was improperly inserted.   It constitutes no part of the record on this appeal.

The judgment of the District Court is modified by striking out all those portions directing payment to be made in coin, and costs are awarded to appellant, except as to that portion of the transcript improperly inserted, as indicated in this opinion.


SANDERSON, J., dissenting.

There is but one point in this case upon which I desire to express an opinion.   The point involves the question whether the plaintiff is entitled to a judgment payable in coin only. A majority of my associates are of the opinion that the plaintiff is not entitled to insist upon payment in coin, and the reason given is substantially the same as that given for a like conclusion in *Fox* v. *Minor*, *ante*, 111.   My reasons

for dissenting in this case, so far as the principal on the bond is concerned, are the same in part as those given by me in the case of *Fox* v. *Minor* ; but so far as the sureties are concerned, they rest upon a different, though cognate foundation. In the opinion delivered by Mr. Justice SAWYER, the Specific Contract Act is assumed to be the only test of the question. In my judgment that Act is a sufficient test so far as the principal on the bond is concerned, but has no immediate bearing upon the question as against the sureties ; nor do I find any occasion for going to the provisions of that Act to find a rule applicable to the principal, for in my judgment there are other grounds, upon which both principal and sureties can be held liable to pay coin, and which are therefore common to both.

But first, assuming that the Specific Contract Act is the sole test, and that under its provisions the principal can be made to pay coin but his sureties cannot, I hold that he can be made to do so in this action as well as in any other, and I so hold for the reasons which are stated in my opinion in *Fox* v. *Minor*. The idea that in this State and under our system of practice, which recognizes no distinction between the forms of actions, certain relief can be obtained by the same party against the same party in one action and not in another, based upon substantially the same state of facts, is new to me. If a plaintiff recovers under our system it is because of the facts which are stated in his complaint and not by reason of the form in which they are stated. As against the principal on the bond in suit, no facts can be stated in another action which are not stated in this, and if the plaintiff is entitled to recover gold at all, or, in any event, it is so entitled upon the facts stated in the present case. This seems to me to be too obvious for argument. If, as my associates hold, the plaintiff is entitled to recover gold as to the principal, but not as to the sureties, there is no difficulty in so adjudging in the present case, and so disposing of the whole matter in one suit. Under our system there is no legal impediment in the way of granting different measures of relief against different defendants if,

under the law, such is the right of the plaintiff, in the same action. If there is, it does not occur to me, nor has it been suggested by my associates, either in this case, or in the case of *Fox* v. *Minor*. The only difficulty hinted at lies in the circumstance that this is an action on the official bond of the party in question, and that in order to recover gold an action would have to be brought on something else. The supposed difficulty, if it has any foundation, either in law or reason, which, as I conceive, it has not, rests upon the idea that where there is a written contract there can be no recovery for gold upon it, under the Specific Contract Act, unless it contains a covenant to pay gold. This idea finds no countenance in the provisions of that Act. Under that Act the plaintiff is entitled to recover upon either of two different conditions being found—first, a promise in writing by the defendant to pay gold; and second, a fiduciary relation between the plaintiff and the defendant, followed by a receipt of gold by the defendant while occupying that relation. In the former case the plaintiff must show a promise in writing, but in the latter he need not. If, in the latter case, there happens to be a written contract between the parties, and there is quite as likely to be one as not, it makes no difference whether it calls for gold or not, for the law steps in and says that the plaintiff is entitled to gold upon the sole ground that the defendant received the money in a fiduciary capacity, and the money so received was gold. If there happens to be a written contract, and it happens to call for gold, the plaintiff is entitled to recover gold upon both grounds; but if it does not happen to call for gold then he is still entitled to recover gold, but only upon the latter ground, and in either case the action is upon the written contract as the foundation of the plaintiff's right to recover. So, were the principal in this case sued alone, and sued squarely upon his bond, the plaintiff would be entitled to recover gold upon alleging that the defendant occupied a fiduciary relation and received the money of the plaintiff in gold coin, notwithstanding the bond is silent upon that subject. Hence, as I have already said, the idea upon which it is

assumed that the plaintiff cannot recover a gold judgment against the principal in this action (because it is upon the bond and the bond does not call for gold) finds no countenance in the Specific Contract Act or anywhere else, so far as my observation goes, except in the leading opinions in this case and in the case of *Fox* v. *Minor*. Where the parties to a contract, which bears interest, fail to insert a rate of interest in their contract, the law steps in and determines the rate of interest for them. So in the case of a written contract in which the parties have failed to specify the kind of money in which payment is to be made, the law steps in and determines the question by first ascertaining whether a fiduciary relation exists between them, and if it does, gold is awarded.

Under the rule adopted by my associates in this case the door to the most stupendous frauds is opened, and those who have the collection, custody and disbursement of the public funds, and the sureties upon their official bonds, are invited to enter and divide the spoils. Under it those persons, as contradictory as it may seem, may lawfully do what the law has expressly prohibited under penalty of fine and imprisonment. Under it the Treasurer of State may, upon the expiration of his term of office, or at any other time, pocket the hundreds of thousands in his vaults, paid by the people of the State in gold coin, as required by law, for the support of the Government, and quietly wait to be sued upon his official bond for its recovery, and when judgment is rendered against him legally satisfy the same in full with the same number of dollars in legal tender notes, making by the transaction a clear profit of a quarter or a half million in gold, according as the Treasury is more or less plethoric. The same is true of every other officer throughout the State who has anything to do with the collection or custody of public moneys. It is true that the law provides that any officer who may change in any way or use in any manner the public funds in his custody, other than as provided by law, shall be deemed guilty of a misdemeanor, and punished by fine and imprisonment. But if he may lawfully do what this Court holds he may in this

case, how can it be said that in so doing he has acted unlawfully? He does nothing secretly, but acts openly and claims to be doing nothing to the legal wrong and injury of the State; on the contrary, he is willing to pay the State all that she can legally claim at his hands, and is willing, if she desires, to go into Court at once and confess judgment for that amount and then pay it on the spot. In legal tender notes, it is true; but if the State has no right to claim anything else, what right has she to punish him when he has done all that he can be legally required to do? It certainly cannot be possible for the same Court to say to him to-day in one action before it "what you propose to do is strictly legal," and to-morrow, in another action involving the same subject matter, "what you proposed to do yesterday and have done in the meantime is in violation of the law against crime, and you must therefore be fined and imprisoned." The same act cannot be lawful and criminal at the same time.

Where consequences so absurd follow, it is certainly safe and judicious to look a little further into the matter and see whether the law is really as represented. If it is, the Courts are not responsible for the consequences, however absurd they may be.

It is proper for me to say at the outset that I do not claim that the sureties in this case are affected by the Specific Contract Act, or that the plaintiff is entitled to a judgment in express terms payable in coin, though I see no sufficient reason for not inserting those terms in the judgment. While I claim that the principal is bound by the Specific Contract Act, the same as in the case of *Fox* v. *Minor*, I admit that the sureties are not, for they have neither agreed to pay gold, nor have they received the money in a fiduciary capacity, or in any other capacity. The bond in this case does not belong to the same class as the bond in *Irwin* v. *Backus* or in *Fox* v. *Minor*, and is not therefore within the rule announced in the former case and contented for by me in the latter. What I do claim, however, is that under the laws of this State, as

heretofore interpreted by this Court, the liability of the sureties is unaffected by the Legal Tender Act of Congress, and that the judgment against them, whether in terms a gold judgment or not, cannot be legally paid or satisfied by the tender of legal tender notes.

I do not propose to open the question whether the legislation of this State, to which I am about to refer, is or is not repugnant to the Legal Tender Act, and if so therefore unconstitutional, or whether this Court erred in deciding as it did in the cases to which I am about to refer. All that I propose to do is to show that under the laws of this State, as interpreted in the former decisions of this Court, the defendants in this case cannot discharge the claim of the plaintiff by the payment of legal tender notes, but can only do so by the payment of coin of the United States.

The General Revenue Act, passed on the 17th of May, 1861 (Statutes, 419, Sec. 2), provides that all taxes for State or county purposes "shall be paid in the legal coin of the United States, or in foreign coin at the value fixed by the laws of the United States," with a proviso that county taxes levied in accordance with any special Act may be collected in such funds as the special Act may designate.

"An Act concerning the State revenue," passed on the 4th of April, 1864 (Statutes 1863–4, p. 364), provides that "all taxes upon real or personal estate, all poll or other taxes, and all licenses levied, in whole or in part, for the use and benefit of the State, shall be collected and paid into the State Treasury exclusively in the gold and silver coin of the United States, *  *  *  and all dues to the public treasury of the State, or of any county or city, shall be payable and be paid exclusively in the gold and silver coin of the United States."

This provision of the Act of the 17th of May, 1861, came before this Court in the case of *Perry* v. *Washburn*, 20 Cal. 318. The case was an application for a mandamus to compel the defendant, who was Tax Collector of the City and County of San Francisco, to receive from the relator legal tender notes in payment of his taxes, which the defendant claimed were

payable only in United States gold and silver coin, or foreign coin at the value fixed by the laws of the United States. The mandamus was denied, the Court holding that legal tender notes were not legal tender in the payment of State and county taxes. The ground of the decision was that a tax was not a debt within the meaning of the Legal Tender Act, and that by the use of the terms, " debts, public and private," Congress only intended such obligations for the payment of money as are founded upon contract.

The Act of the 4th of April, 1864, came before this Court in *Ex parte Whipple,* on habeas corpus, at the January term, 1866. The case has not been reported. Whipple had been convicted of a violation of the law against gaming, and fined in the sum of one thousand dollars, and ordered to be imprisoned until the fine was paid at the rate of two dollars per day. He had tendered in payment of his fine the requisite sum in United States treasury notes, which had been refused on the ground that the fine was a public " due " within the meaning of the Act of the 4th of April, 1864, and therefore could be paid only in gold and silver coin of the United States. Thereupon he sued out a writ of habeas corpus and came before· this Court claiming to be entitled to be discharged from custody by reason of the premises. The Court denied his petition and remanded him, holding that United States treasury notes were not a legal tender in payment of the fine. The opinion of the Court was delivered by Mr. Justice SAWYER, who, among other things, said : " We also think the fine in question in this case was required by the Act of the 4th of April, 1864, to be paid exclusively in the gold and silver coin of the United States." So this Court held that the fine was a " due to the public treasury," in the language of that Act, and therefore payable only in United States gold and silver coin.

It is obvious from the statutes to which I have referred, that it is and has been the clear intent of the Legislature of this State to save its finances of all kinds from the operation of the Legal Tender Act of the Federal Government, and to

allow nothing in the form of money, except gold and silver coin of the United States, to find its way into the Treasury of the State, or into the Treasury of any county or city. But, as if to leave no room for doubt or argument on that head, it has been expressly provided, in addition to requiring all taxes and public dues of every kind to be paid in coin, that any officer having to do with the public moneys who shall change the same into a different kind of money shall be deemed guilty of a felony and on conviction thereof shall be punished by fine or imprisonment. (Statutes 1863, p. 97, Secs. 3, 4.) This legislation necessarily, if constitutional, has the effect to completely nullify the Congressional legislation upon the subject of legal tender, so far as the payment of taxes and other public dues are concerned ; or, which amounts to the same thing, to withdraw all questions touching, or in any way affecting State, county and city funds from the operation of the Legal Tender Act. The result has been, and is the same, as if the Legislature had provided in express terms that " United States treasury notes shall not be a legal tender for the payment of taxes upon real or personal estate, poll or other taxes, or licenses, levied in whole or in part for the use and benefit of the State ; or for the payment of any dues, of any kind whatever, to the public treasury of the State, or of any county or city ; but gold and silver coin of the United States shall be and remain the only legal tender for the payment of the same, notwithstanding any law of Congress to the contrary." Such being the case no argument is required to show that the money sued for in this case is a " due " to the public treasury of the County of Mendocino, and therefore within the rule requiring payment to be made in gold and silver coin of the United States, whether the judgment be entered, in terms, for coin or not; and, in my view, this conclusion is fully sustained by the decisions of this Court to which I have referred. If a judgment, in a criminal action, that the defendant do pay to the people of the State of California a certain sum of money, by way of punishment for his offense, is a " due," as was held in *Ex parte Whipple*, then, by parity of reason, a

judgment in this case that the defendants do pay to the County of Mendocino the sum therein specified, on account of public money converted to his own use by a defaulting Treasurer, is also a " due " to the public treasury of the plaintiff, and can be satisfied only, as Whipple was made to satisfy his fine, by payment in gold and silver coin of the United States.

That the two cases to which I have referred are sound I have no doubt. There might be much said in addition to what has been said in those cases, and other cases, involving questions of currency decided by this Court in support of the validity of the legislation of this State and of the soundness of the doctrine announced in those cases, and for which I am now contending; but the question does not possess the interest which it once did, and I forbear further discussion. It is sufficient to say that where there are two or more kinds of money, either of which is equally lawful and a legal tender for the payment of debts or the discharge of legal claims of any kind, it cannot, in the nature of things, be unlawful for individuals or States to elect in which kind they will transact their business or make and discharge their obligations; and, having elected, there cannot, in the nature of things, be any valid reason why they should not be held to their election ; to hold to a contrary rule would be to offer a premium for Punic faith and give countenance to moral dishonesty. The mere fact that two kinds of money exist in which parties may lawfully perform their promises, of different values in fact, if not in law, necessitates a choice between them, for the minds of contracting parties cannot meet intelligently until a common standard of value in fact has been agreed upon, and no amount of legislation can obviate such necessity. If it is lawful to pay gold it must of necessity be lawful to agree to pay it, and if both be lawful, the Courts may not only lawfully enforce the promise, but a refusal on their part to do so would outrage justice and shock the moral sense of mankind. This is truth crystalized, and no amount of blind patriotism, partisan clamor or legal sophistry can resolve it.

If, as this Court has repeatedly held, the Specific Contract

Act is not repugnant to the Legal Tender Act, then by parity of reason the legislation of this State requiring all public dues to be paid in coin is not; for they both rest upon the same foundation—the right to elect between two mediums of payment, each of which is equally lawful—a right which the Federal Government has never found it necessary to deny and has not denied to itself or anybody else, but has itself exercised and still does. If it is lawful for the Federal Government to collect its customs in gold, it is lawful for the State of California to collect its taxes and other public dues in gold, and that, too, independent of the question whether her sovereign power of taxation does not carry with it the minor power to determine in what currency her taxes shall be paid. If it is constitutional for the Legislature of this State—and this Court has repeatedly decided that it is—to require the principal upon the bond in suit to pay the money in suit in gold coin, then for the same reason it is constitutional for the Legislature to require his sureties to do it. If the Legislature has required the former to do it by the passage of the Specific Contract Act, then it has required both him and his sureties to do it by the passage of the Acts to which I have referred.

But, as already stated, I do not propose to discuss this question. My present purpose has no further scope than to show that the claim in suit is a "public due" which cannot be paid, under the laws of this State and the former decisions of this Court, except in coin; that the collection and payment of "public dues" stand precisely where they stood before the passage of the Legal Tender Act—precisely where they would have stood had that Act never been passed, and that if it is possible for the Legislature to so declare, it has done so in language not to be misunderstood.

I am of the opinion that the judgment in this case, so far as it involves the question in hand, should be affirmed.

Mr. Chief Justice CURREY did not express any opinion.