### ST. LOUIS BREWING ASS'N v. HAYES et al.

(Circuit Court of Appeals, Fifth Circuit.    November 21, 1899.)

#### No. 799.

1. PRINCIPAL AND SURETY—EFFECT OF FAILURE OF PRINCIPAL TO SIGN BOND.
   Where the failure of a principal named in a bond to sign it in no way affects the rights or liability of the sureties, as where he is equally bound by the contract to secure the performance of which the bond is given, and under the laws of the state the rights of the sureties are the same in that case as though he had signed the bond, his omission to sign it does not relieve the sureties from liability thereon.

2. BONDS—PROOF OF DELIVERY.
   The delivery of a bond need not be proved by direct evidence, but may be inferred from the acts of the parties.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

George E. Mann, for plaintiff in error.

John Lovejoy, Alex Sampson, and M. L. Malevinski, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. On the 18th of November, 1893, the St. Louis Brewing Association made a contract with George Hayes, making him its agent for the sale of beer. This contract was duly signed by both parties to it. The association agreed to furnish Hayes the beer at a price stated, and he was to be its only agent to sell beer in Galveston, Tex. He was to pay cash on receipt of bill of lading, and to return empty kegs and barrels. The association was to furnish him with horses, carts, and harness, free of charge, to perform the duties of the agency; the same to be returned to the association at the termination of the agency. The agreement required the agent "to give good and sufficient bond or security, in the amount of $2,500, signed by two responsible sureties." The required bond was given. In the body of the bond, it purports to be the obligation of "George Hayes, as principal, and the other subscribers hereto, Nicolaus Bohn, H. C. Kerst, and George Schwoebel, as sureties." The bond is signed at the foot by the three sureties named in it, but it was not signed by George Hayes. The bond bears date November 20, 1893,—two days after the date of the contract of agency, signed by George Hayes, under which the bond was given. The condition of the bond was, in brief, that Hayes should pay the association for the beer sold and delivered to him under the contract

from its date, "November 18, 1893, to November 18, 1894." The bond recited the fact that Hayes was appointed agent for the association, and that it was given as the security required by the agreement. Under the contract the association delivered beer to Hayes, who received and sold it. The value of the beer delivered was over $11,000, but payments were made by Hayes which reduced the debt to about $5,000. This suit was brought to recover this debt. The plaintiff, by its petition, sought judgment against Hayes for the amount remaining due on the account, and judgment against the defendants who are sureties on the bond for the amount of the bond, $2,500. On the first trial in the court below, verdict and judgment were had against Hayes for the amount due on the account; but, under the instructions of the court, the sureties were relieved of liability by reason of an alleged new contract between the association and Hayes. A writ of error was sued out to this court, where it was held that the transaction on which the case had been determined in favor of the sureties "did not operate wholly to release them from their obligation." The opinion of this court on this point appears in 17 C. C. A. 634, 71 Fed. 110. The case was reversed, and remanded for a new trial. On the second trial, verdict and judgment were had against Hayes for $5,167.46, with interest from January 1, 1895, and a verdict for the sureties on the bond (to quote the verdict), "releasing them from responsibility on the bond." Hayes is insolvent. The case is brought to this court by the association, seeking to make the sureties liable for $2,500 of the debt.     •

The main question in this case is whether the failure of Hayes to sign the bond made it invalid. The defendants the sureties alleged in their answer that the bond was "not the obligation of the defendants, in that it was not executed by the principal therein named.  *  *  *" The evidence of these defendants tended to show that they signed as sureties with the understanding that Hayes was to sign the bond as principal. Their answer also averred that the bond was not to be delivered until it was so signed by Hayes, the principal named in it. At the request of the defendants, the court charged the jury:

"If you believe from the evidence in this case that the bond or written obligation sued on was never signed and delivered by the defendant George Hayes, or by any one for him, or with his knowledge and consent, to the St. Louis Brewing Association, the plaintiff in this suit, then your verdict should be for the defendants Nicolaus Bohn, H. C. Kerst, and George Schwoebel."

It was an undisputed fact in the case that George Hayes did not sign the bond. The bond itself was in evidence, signed only by the sureties. To instruct the jury to find for the sureties, unless Hayes signed the bond, was equivalent to peremptory instructions to discharge the sureties. It was, in effect, the announcement of the court, binding on the jury, that the bond was not a legal obligation of the sureties, even if formally delivered, because it had not been signed by George Hayes, the principal named in it. If the failure of Hayes to sign this bond made it invalid, this charge is correct; otherwise, it is erroneous. The reason underlying the

discharge of sureties from liability in cases like this is the increased liability of the surety caused by the failure of the principal to sign the obligation executed by the surety. It would be manifestly unjust to hold the surety bound, when the principal fails to sign the instrument, if by its terms it was to be signed by him, and his signing fixed a liability on him not otherwise placed on him by the transaction, for in such case his signature would lessen the liability of the surety. The same principle would govern where the signature of the principal would give the sureties some right or power tending to protect them which was not conferred on them otherwise by the transaction or by law. The surety on a bail bond would not be bound if it was not signed also by the principal named in it as an obligor, because the signing by the principal would confer an advantage on the surety. In such case the court asked:

"Suppose they [the sureties] wish to arrest the principal in some distant place or in some other state; what evidence would they carry with them that they were his bail? There is nothing to estop him from denying the fact, nor any proof that it was true." Bean v. Parker, 17 Mass. 591; 1 Brandt, Sur. (2d Ed.) § 157.

Do we find in the case at bar that the signature of the principal would have any effect on the rights or liability of the sureties? He had already signed the contract creating the agency. The bond was a part of that contract, given pursuant to its terms. The sureties could be held liable for no sum, unless the principal was also liable for the same sum under the contract. The signing of the bond by the principal would not change his liability in any way, nor vary the measure of evidence required to fix his liability. No breach of the bond could be shown without first proving a debt of the principal to the payee in the bond. This evidence was required, whether the principal signed the bond or not. In either case the surety could not be sued "unless his principal is joined with him, or unless a judgment has been previously rendered against the principal. * * *" Rev. St. Tex. art. 3818. In either case, if the surety paid the judgment against his principal, it is considered as assigned to the surety. Id. art. 3815. In Lindsay v. Price, 33 Tex. 280, an appeal bond is held valid against the sureties, although not signed by the appellant. The reason given is that all the obligations stipulated in the bond are incumbent on him independent of the bond. In San Roman v. Watson, 54 Tex. 254, the court reaffirmed the doctrine announced in Lindsay v. Price, supra, and cited, as sustaining the same view, Cooke v. Crawford, 1 Tex. 10; Shelton v. Wade, 4 Tex. 150; and McKellar v. Peck, 39 Tex. 381. Both the contract and the bond were executed in the state of Texas, and, it has been assumed in argument, are governed by the laws of that state. The Texas statutes cited, providing for a joint action against both principal and sureties, furnish the rule of practice for the United States courts. Sawin v. Kenny, 93 U. S. 289, 23 L. Ed. 926; Rev. St. U. S. § 914. In Williams v. Marshall, 42 Barb. 524, the sureties who were sued had entered into a contract with certain persons that if they would sell and deliver books to one William H. Hadley, "for which said books, * * * if said Hadley

should not pay within three months from the date of each invoice or delivery," they would pay. The bond, signed by the sureties, names "William H. Hadley as principal," and names the sureties, but it is signed only by the sureties. Hadley failed to pay for the books, and, suit being brought on the bond against his sureties, they made the defense that Hadley failed to sign the bond. The court said:

"It is objected that, because in the body of the instrument in question the name of the principal is inserted as one of the obligors, it ought to have been subscribed by him, in order to make it binding on the sureties. The omission of the principal to sign the instrument operates in no respect prejudicially to the latter. In the recital they declare that they contract as sureties, and that William H. Hadley is principal; so that, if he had signed it, his relation to them or to the vendor of the goods would be in no degree different from what it now is. In either case they would be only liable conditionally; that is, in case Hadley failed to pay for the goods to be sold or delivered to him by the plaintiffs. This being the case, there can be no valid reason why the instrument should be deemed void."

It is true that, when the failure of the principal to sign the instrument affects the surety injuriously, the cases usually, and we think correctly, hold that the surety is not bound; but when, as in this case, the failure of the principal to sign the instrument in no way affects the rights of the surety, the instrument is valid, and the surety is bound. 1 Brandt, Sur. (2d Ed.) §§ 151, 152, and cases there cited. The foregoing conclusion settles other contentions in this case. Hayes' signature not being essential to the validity of the bond, and, if added, in no way changing the liability or affecting the rights of the parties, all issues and evidence as to the understanding that he was to sign it become immaterial.

One of the defenses presented is a denial of the delivery of the bond. Delivery is, of course, essential to its validity. In order to bind a surety or guarantor, his contract must be delivered, and it takes effect from the time of its delivery. 1 Brandt, Sur. (2d Ed.) § 25. When there is conflicting evidence as to the delivery, it is a question for the jury. Formal delivery, however, need not be proved by direct evidence, but it may be inferred from the acts of the parties. 4 Am. & Eng. Enc. Law (2d Ed.) 622. The sureties themselves testify that they had knowledge of the fact that the obligee had possession of the bond, and that sales were being made on its security. From the existence of these facts, and their knowledge of them, it may be inferred that the bond was formally delivered; and, if the delivery on their part was coupled with any condition affecting the validity of the bond, it may be inferred by their silence and acquiescence that such condition had been waived. Wright v. Lang, 66 Ala. 396.

Other questions have been argued, but, as they may not arise on the next trial, it would perhaps serve no useful purpose to discuss them. The judgment is reversed, and the cause remanded for a new trial.