DEER LODGE COUNTY, RESPONDENT, *v.* UNITED STATES FIDELITY & GUARANTY COMPANY OF BALTIMORE, APPELLANT.

(No. 2,896.)

(Submitted November 17, 1910. Decided December 6, 1910.)]

[112 Pac. 1060.]

*Principal and Surety—Official Bonds—Signature of Principal— Failure to Approve—Effect—Statutory Construction—Presumptions.*

Official Bonds—Failure of Principal to Sign—Effect.
   1. *Held,* that the surety on an official bond, joint and several in character, was not released from liability because of the failure of the principal to sign the bond.

Statutory Constructions—Statute Adopted from Other State.
   2. By adopting a statute from another state after construction thereof by the highest court of that state, the legislature will be presumed to have also adopted the construction thus placed upon it.

Official Bonds—Failure to Approve—Effect.
   3. The failure of the district judge to approve the bond of a county treasurer, as provided by section 380, Revised Codes, did not work a release of the surety thereon.

*Appeal from District Court, Deer Lodge County; George B. Winston, Judge.*

Action by Deer Lodge County against the United States Fidelity & Guaranty Company of Baltimore, to recover on an official bond. Judgment for plaintiff, and defendant appeals. Affirmed.

*Messrs. Gunn & Hall,* for Appellant, submitted a brief.    *Mr. E. M. Hall* argued the cause orally.

An official bond must be signed by the principal, and, if not, it is void as to him and the sureties thereon.    The weight of authorities is in harmony with the conclusions reached by this court in *Ney* v. *Orr,* 2 Mont. 559, *Pierse* v. *Miles,* 5 Mont. 549, 6 Pac. 347, and *King* v. *Elling,* 24 Mont. 470, 62 Pac. 783.    (See *Board of Education* v. *Sweeney,* 1 S. D. 642, 36 Am. St. Rep. 767, 48 N. W. 302; *Martin* v. *Hornsby,* 55 Minn. 187, 43 Am. St. Rep. 487, 56 N. W. 751; *People* v. *Hartley,* 21 Cal. 585, 82 Am. Dec. 758; *Bjoin* v. *Anglim,* 97 Minn. 526, 107 N. W. 558; *Bunn* v. *Jetmore,* 70 Mo. 228, 35 Am. Rep. 425; *Johnston* v. *Kimball Township,* 39 Mich. 187, 33 Am. Rep. 372; *American R. Co.* v. *American Bond & Trust Co.,* 72 Neb. 100, 100 N. W. 138.)    Respondent in the lower court cited the cases of *Dackich* v. *Barich,* 37 Mont. 490, 97 Pac. 931, *Woodman* v. *Calkins,* 13 Mont. 363, 40 Am. St. Rep. 449, 34 Pac. 187, *Hoskins* v. *White,* 13 Mont. 70, 32 Pac. 163, *Kench* v. *Parchen,* 22 Mont. 519, 74 Am. St. Rep. 625, 57 Pac. 94, and *Cockrill* v. *Davie,* 14 Mont. 134, 35 Pac. 958, as overruling the case of *Ney* v. *Orr, supra.*    Such cases do not overrule or even criticise that case, and are all distinguishable from it and the case at bar, for they relate to undertakings or bonds for the performance of some specific thing and not to official bonds.    Such distinctions are pointed out by this court in *Russell* v. *Chicago B. & Q. Ry. Co.,* 37 Mont. 10, 94 Pac. 488, 501; *Rodini* v. *Little,* 17 Mont. 448, 43 Pac. 501, 52 L. R. A. 165.    Respondent also contended that the bond was "joint and several," and that therefore the absence of the prin-

cipal's signature did not relieve the sureties. It was a common-law bond, joint and several in its terms, that was considered in the case of *Ney* v. *Orr;* also the bond in *Russell* v. *Annable,* 109 Mass. 72, 12 Am. Rep. 665, quoted with approval in *Ney* v. *Orr,* was a joint and several bond. So was the bond in *Board of Education* v. *Sweeney,* 1 S. D. 642, 36 Am. St. Rep. 767, 48 N. W. 303.

We assume that respondent suggested this defect in the bond in its complaint in an attempt to bring it within the provisions of sections 393 and 394, Revised Codes. The provisions of section 394 do not apply to the bond set out in the first cause of action, for the reason that such section was not enacted until March 9, 1907, and after this bond had expired. "A bond void by the Act under which it is executed will not be valid by a subsequent Act." (*Morton* v. *Rutherford,* 18 Wis. 298.) Furthermore, said sections 393 and 394 cannot apply to this alleged bond, for the reason that a void bond is no bond, and therefore there is nothing in law to cure defects in. (*People* v. *Hartley,* 21 Cal. 585, 82 Am. Dec. 758; *Boreman* v. *Jung Brewing Co.,* 33 Ind. App. 399, 55 N. E. 495.)

Under the mandatory provisions of the statutes of this state (Revised Codes, secs. 380, 382, 383), an official bond is not accepted by a county until the approval and signature of the officer authorized by law to accept it is indorsed thereon. Until that is done it is merely an offer on the part of the sureties to enter into a contract with the county. Where there is no acceptance and valid delivery of a bond the sureties thereon do not become liable. That there is no contract where there has been no acceptance of an offer, by the officer or person authorized to accept, is elementary. (*Commissioners* v. *McCormick,* 4 Mont. 115, 5 Pac. 287; *Postmaster General* v. *Norvell,* Gilp. 106, 19 Fed. Cas. 1103; *United States* v. *Le Baron,* 19 How. (U. S.) 73, 15 L. Ed. 525; *Bruce* v. *State,* 11 Gill & J. (Md.) 382; *State* v. *Jarrett,* 17 Md. 309; *Commonwealth* v. *Yarbrough,* 84 Ky. 496,. 2 S. W. 68; *People* v. *Kneeland,* 31 Cal. 288; *Mangrum* v. *Truesdale,* 128 Cal. 145, 60 Pac. 775.) It is true that there are many

cases holding that the failure to approve an official bond does not invalidate it so as to release the sureties from liability; but an examination of such authorities will disclose that in all such cases the statutes are construed to be merely directory and that the provision requiring the approval of the bond is not mandatory. All such authorities are not in point under a mandatory statute such as we have in this state.

In behalf of Respondent, there was a brief by *Mr. Albert J. Galen*, Attorney General, and *Mr. J. A. Poore*, Assistant Attorney General. *Mr. Poore* argued the cause orally.

What was the intent and purpose of the legislature in requiring the bond to be "signed and executed" by the principal, and is this requirement mandatory or merely directory? The requirement of this statute was not intended for the benefit of the surety, but of the state. The surety remains in exactly the same position as though the principal had signed the bond; its liability remains the same, and its recourse against the principal is not impaired. (*O'Hanlon* v. *Scott*, 89 Hun, 44, 35 N. Y. Supp. 31; *Trustees* v. *Scheik*, 119 Ill. 579, 8 N. E. 189.) A statute requiring the principal to sign the bond, where his liability is fixed by operation of law, is directory. (*Pima County* v. *Snyder*, 5 Ariz. 45, 44 Pac. 297.) Section 388, Revised Codes, provides: "All official bonds must be in form joint and several, and made payable to the state of Montana." The obligation under consideration here is joint and several. Where a bond is in form joint and several, the failure of some of the parties named in the instrument as obligors to sign will not affect the liability of those who do sign. (*Stimson Mill Co.* v. *Kiley*, 42 Pac. 1072; *Kurtz* v. *Forquer*, 94 Cal. 91, 29 Pac. 413; *Weir* v. *Mead*, 101 Cal. 125, 40 Am. St. Rep. 46, 35 Pac. 567; *State* v. *Bowman*, 10 Ohio, 445; *Kenck* v. *Parchen*, 22 Mont. 519, 74 Am. St. Rep. 625, 57 Pac. 94; *State* v. *McDonald*, 4 Idaho, 468, 95 Am. St. Rep. 137, 40 Pac. 312; *Cutter* v. *Whitmore*, 10 Mass. 442; *People* v. *Love*, 25 Cal. 530; *Loew* v. *Stacker*, 68 Pa. 226.)

In the case at bar, the liability of Nadeau, the principal, was fixed by law—whether he ever gave a bond or not, or whether or not he ever signed the bond which was executed by his surety, his individual responsibility to the state remained the same. The purpose of the bond required by section 2976, Revised Codes, is to insure the legal responsibility of the treasurer—that he will perform such duties as may be imposed on him by law, and the sureties, having signed the bond, are liable even though Nadeau failed to sign. (See *Herrick* v. *Johnson,* 11 Met. 26; *City of Deering* v. *Moore,* 86 Me. 181, 41 Am. St. Rep. 534, 29 Atl. 988; *Woodman* v. *Calkins,* 13 Mont. 364, 40 Am. St. Rep. 449, 34 Pac. 187; *Hoskins* v. *White,* 13 Mont. 70, 32 Pac. 163; *Goodyear etc. Co.* v. *Bacon,* 148 Mass. 542, 20 N. E. 175; *Williams* v. *Marshall,* 42 Barb. (N. Y.) 524; *Eureka Sandstone Co.* v. *Long,* 11 Wash. 161, 39 Pac. 446; *O'Hanlon* v. *Scott, supra.*) Where the principal omits to sign his name to a bond, but accepts the office, and has his bond signed by his sureties, and signs his name to the oath of office attached to the bond, this is a signing of the bond, and the sureties must be held. (*Pima County* v. *Snyder, supra; Hall* v. *State,* 69 Miss. 529, 13 South. 38.)

Are sections 380, 382 and 383, Revised Codes, mandatory, and will a failure to comply with them render the bond void? It is our contention that the approval of the bond by the court is merely directory, and its purpose is to furnish some means by which the state may be assured that the bond is sufficient, both in form and amount, to protect the state as the law intends it shall be protected, and the officer to whom it is presented acts for the state alone, and neither the surety nor principal is affected unless the bond is disapproved. The bond is a valid obligation as against the principal and sureties without approval. (*People* v. *Edwards,* 9 Cal. 292; *People* v. *Evans,* 29 Cal. 430; *Mendocino County* v. *Morris,* 32 Cal. 148; *People* v. *Huson,* 78 Cal. 157, 20 Pac. 396; *City of Oakland* v. *Snow,* 145 Cal. 420, 78 Pac. 1060; *Estate of Ramsey* v. *People,* 197 Ill. 582, 90 Am. St. Rep. 177, 64 N. E. 549; *Marshall* v. *Hamilton,* 41 Miss. 234; *Jones* v. *State,* 7 Mo. 81, 37 Am. Dec. 180; *State* v. *Paxson,* 65

Neb. 110, 90 N. W. 983; *Holt* v. *Scott,* 53 Neb. 176, 73 N. W. 681; *Irwin* v. *Crook,* 17 Colo. 16, 28 Pac. 549; *Commonwealth* v. *Teel,* 33 Ky. Law Rep. 741, 111 S. W. 340; *State* v. *Frentress.* 37 Ind. App. 245, 76 N. E. 821; 29 Cyc. 1452.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the general election held in 1904 E. J. Nadeau was elected county treasurer of Deer Lodge county, and at the election held in November, 1906, he was re-elected to the same office. In each instance he qualified by taking and filing the official oath and giving bond. The bond in each instance was furnished by the defendant company as surety. Each bond in terms followed the requirements of the statute. However, the bond given in 1904 was not signed by Nadeau, but was approved by the district judge, filed and recorded as required by law; while the bond given in 1906, though properly executed, was not approved by the district judge but was duly filed and recorded. Nadeau appointed George M. Johnston his deputy for each term. This action was brought by Deer Lodge county against Nadeau and the defendant surety company to recover certain sums of money alleged to have been collected by Johnston and converted to his own use. The first cause of action is upon the bond given in 1904, and is for the recovery of $6,325. The second cause of action is upon the bond given in 1906, and is for the recovery of $3,300. A trial of the cause resulted in a judgment in favor of the plaintiff for $2,200 on the first cause of action, and $3,300 on the second cause of action. From that judgment the defendant surety company appealed. The contention is made by appellant that the complaint does not state facts sufficient to constitute either cause of action.

1. The complaint sets forth the facts fully, including the fact that the bond given in 1904 was not signed by Nadeau, the principal. It alleges, in substance, that the bond was approved, filed, recorded and acted upon by all the parties interested as the official bond of Nadeau; that Nadeau entered upon the dis-

charge of his duties as such treasurer, and thereafter paid to the defendant company the premium for furnishing said bond. It is now insisted by appellant that, since it appears affirmatively from the first cause of action that the bond was not signed by Nadeau, the defendant surety company cannot be held liable in this action for the defalcation of his deputy. The provisions of the Revised Codes invoked by both parties to this appeal are section 384, which reads: "All official bonds must be signed and executed by the principal and two or more sureties, or by the principal and one or more surety companies." Section 388, as follows: "All official bonds must be in form joint and several. * * * " And section 389: "Every official bond executed by any officer pursuant to law is in force and obligatory upon the principal and sureties therein for any and all breaches of the conditions thereof committed during the time such officer continues to discharge any of the duties of or hold the office, and whether such breaches are committed or suffered by the principal officer, his deputy or clerk."

As we understand counsel for appellant, their contention is that the statute makes the signature of the principal necessary to the validity of an official bond. They cite *Ney* v. *Orr*, 2 Mont. 559, and *Pierse* v. *Miles*, 5 Mont. 549, 6 Pac. 347. In *Ney* v. *Orr* there was involved the validity of an appeal bond not signed by Kay, appellant. The report does not set forth the condition of the bond, but the court in speaking of it said: "They [the sureties] promised to pay whatever should be recovered upon the bond against Kay if he did not pay." We assume that this is a correct statement of the principal term of the bond, and upon this assumption the correctness of the court's conclusion is beyond question; for, if the sureties were bound to pay only in the event that recovery was had against Kay on the bond, it follows as a matter of course that, if Kay was not a party to the bond, recovery against him on the bond could not be had, and the contingent liability of the sureties never could attach. The correctness of the court's conclusion was so apparent upon the face of the opinion that a citation of authorities was needless;

but the court, in a vain effort to justify a self-evident conclusion, cites *City of Sacramento* v. *Dunlap*, 14 Cal. 421, but fails to distinguish between a joint, and a joint and several, bond. Other cases are cited, but they are not in point to the question which was before the court. It is true that the bond in *Ney* v. *Orr* was in terms joint and several, but the liability of the sureties was conditioned upon a recovery by Ney against Kay upon a bond to which Kay was not a party—a contingency which never could arise. Much that is said in the opinion is *obiter dictum*, and while we may concur in the result reached, upon the assumption stated above, we do not deem the decision authority in this instance.

*Pierse* v. *Miles* does not involve any question analogous to the one before us, though there are expressions found in the opinion which might indicate the contrary. The undertaking considered in that case was given to secure an attachment, and was not conditioned as required by law. However, this court did not treat it as void, but only defective, for it reversed the cause and remanded it in order that the plaintiff might have an opportunity to give a new undertaking. In many cases this court has referred to the distinction between a statutory undertaking and a statutory bond. Typical of these cases is *King* v. *Elling*, 24 Mont. 470, 62 Pac. 783, in which it is said: "There is, it is true, a distinction in some respects between a statutory bond and a statutory undertaking, as was decided in *Pierse* v. *Miles*, 5 Mont. 549, 6 Pac. 347, and in *Ney* v. *Orr*, 2 Mont. 559, consisting chiefly in the requirement that the principal must be a party to the former, while the person in whose behalf the latter is executed need not be a party to it." As a general statement of the distinguishing characteristic between the two classes of instruments, the foregoing is clearly correct.

Upon the question of the liability of sureties upon an official bond not signed by the principal, the authorities are in conflict. The leading cases which it is said hold the sureties are not bound are: *Hall* v. *Parker*, 37 Mich. 590, 26 Am. Rep. 540; *Bunn* v. *Jetmore*, 70 Mo. 228, 35 Am. Rep. 425; *Mayo* v. *Renfroe*, 66

Ga. 408; *Board of Education* v. *Sweeney*, 1 S. D. 642, 36 Am. St. Rep. 767, 48 N. W. 302; *Martin* v. *Hornsby*, 55 Minn. 187, 43 Am. St. Rep. 487, 56 N. W. 751; and *Weir* v. *Mead*, 101 Cal 125, 40 Am. St. Rep. 46, 35 Pac. 567.

*Hall* v. *Parker* was decided upon the evidence, which showed that the sureties signed the bond upon the express condition that it should be signed by the principal before it was delivered. The court did not go further than to say that the sureties could properly interpose as a defense the breach of the condition upon which they became sureties. To the same effect is *Johnston* v. *Kimball Township*, 39 Mich. 187, 33 Am. Rep. 372.

In *Bunn* v. *Jetmore*, above, the supreme court of Missouri did decide the question, but gives no further reason for its conclusion than the following: "The received doctrine is that securities who execute a writing as such only can show in discharge of their liability that their principal never was bound, and we can perceive no reason why that principle cannot be invoked in this case."

The decision in *Mayo* v. *Renfroe* is that, since the bond in question was not drawn, executed or approved as required by statute, there was not any execution or delivery of it, and consequently it never became effective even against the sureties.

In *Board of Education* v. *Sweeney* the question was squarely before the supreme court of South Dakota, and the court said: "After a careful review of the authorities, and the reasoning upon which they are based, we think the better rule is that an official bond in which the officer is named as principal, but which is not executed by him, is *prima facie* invalid, and not binding upon the sureties."

In *Martin* v. *Hornsby* the court said: "*Prima facie* the instrument now being considered was incomplete and invalid, and was not binding upon those who signed it as sureties." Reference is made to a prior decision of the same court, to *Curtis* v. *Moss*, 2 Rob. (La.) 367, and to *Board* v. *Sweeney* above.

In *Weir* v. *Mead* the bond sued upon was joint, and was held invalid upon the authority of *City of Sacramento* v. *Dunlap*,

above, and *People* v. *Hartley,* 21 Cal. 585, 82 Am. Dec. 758, but the court makes clear the distinction between a bond joint in terms, and one joint and several, holding that a bond of the first class is invalid without the signature of the principal, whereas a bond of the second class under like circumstances is valid and binding upon the sureties. (*Kurtz* v. *Forquer,* 94 Cal. 91, 29 Pac. 413.) And the reason for this distinction is so apparent that further comment seems unnecessary; and this is true even though the Minnesota court in *Martin* v. *Hornsby* was unable to perceive the reason. (See *Murfree* v. *Official Bonds,* sec. 9.) In *St. Louis Brewing Assn.* v. *Hayes,* 97 Fed. 859, 38 C. C. A. 449, the court states the ground upon which the foregoing decisions are based, as follows: ''The reason underlying the discharge of sureties from liability in cases like this is the increased liability of the surety, caused by the failure of the principal to sign the obligation executed by the surety. It would be manifestly unjust to hold the surety bound, when the principal fails to sign the instrument, if by its terms it was to be signed by him and his signature fixed a liability on him not otherwise placed on him by the transaction, for in such case his signature would lessen the liability of the surety. The same principle would govern where the signature of the principal would give the sureties some right or power tending to protect them which was not conferred on them otherwise by the transaction or by law.'' But the court holds that such reason has no application to a case unless the surety is prejudicially affected by the failure of the principal to sign.

The reason which prompted the legislature to require that a public officer shall sign his official bond is not apparent. The provisions of the statute with reference to such bonds generally are for the protection of the public interests (29 Cyc. 1452), and, unless it appears that the interests of the sureties are prejudiced by the failure of the principal to sign the bond, the plainest dictates of reason would suggest at once that the public should not suffer by such technical oversight.

As said before, the bond in question is joint and several, and, had Nadeau signed it, an action might have been maintained

against this surety without joining the principal. (Revised Codes, sec. 6492.) The failure of the principal, then, to sign the bond, did not in the least increase the burden upon the surety or rob it of any right or defense it otherwise might have had. Nadeau was bound by law to do everything required in the bond, and his signature to that instrument would not have increased or otherwise changed his liability. Under such circumstances, we think the decided weight of authority and the better reasoning favor the conclusion that the surety is not released by the failure of the principal to sign the bond.

The decision of this court in *Cockrill* v. *Davie,* 14 Mont. 131, 35 Pac. 958, while not directly in point upon the facts, very forcefully announces the view of the law just stated. This court said: "Appellant insists that the bond in question is wholly void because Davie, named therein as principal, did not sign it along with the sureties; but, after much consideration of this subject and the authorities, we cannot sustain that view. The same obligation was fixed upon Davie by another contract, and Renner and Cornelius [the sureties] undertook and promised, in writing, to answer for the default of Davie in respect to his engagements by virtue of that contract, which the sureties described in their bond. This bond was a collateral ingraftment upon the building contract, whereby these sureties took upon themselves the burden of answering for any default which Davie might make in respect to his obligation thereunder. As to such obligations, where the liability of the principal is fixed by contract or by operation of law, the sureties who guarantee the fulfillment of that obligation cannot avoid their obligation because the principal did not sign the bond with them. There is no reason or principle of law, or substantial right involved, which should lead to such a ruling; and the same, we think, without doubt, would be against the contemplation, understanding and purpose of the contracting parties, because the sureties in such a case neither gain nor lose any substantial right by reason of the principal signing, or omitting to sign, such undertaking, which he procured on his behalf." (*St. Louis Brewing Assn.* v. *Hayes,* above.) Citing the *Cockrill Case,* the supreme

court of Arizona, in *Pima County* v. *Snyder,* 5 Ariz. 45, 44 Pac. 297, in a case in all respects similar in its facts to the one before us and under statutory provisions the same as our own, held that the surety is not released by reason of the failure of the principal to sign the bond. To the same effect is *Kurtz* v. *Forquer,* above; *State* v. *McDonald,* 4 Idaho, 468, 95 Am. St. Rep. 137, 40 Pac. 312; *McKissack* v. *McClendon,* 133 Ala. 558, 32 South. 486.

In the following cases the statutes in question did not in express terms require the officer to sign his official bond, but the courts proceeded upon the theory that it was his duty to do so, and that such duty was clearly implied by law, but nevertheless held that the surety was bound in the absence of the principal's signature. (*State* v. *Bowman,* 10 Ohio, 445; *Douglas County* v. *Bardon,* 79 Wis. 641, 48 N. W. 969; *Miller* v. *Tunis,* 10 U. C. C. P. 423. See, also, *Loew's Admr.* v. *Stocker,* 68 Pa. 226; *Tillson* v. *State,* 29 Kan. 452; 1 Brandt on Suretyship, sec. 170.)

In *Trustees* v. *Sheik,* 119 Ill. 579, 8 N. E. 189, the Illinois court, after reviewing the conflicting decisions at length, concluded its determination of a case the facts of which are similar to the one before us, as follows: "We have given the authorities bearing on the question due consideration, and we are not inclined to adopt the view held by the courts that a bond signed by the sureties without the signature of the principal may not be binding upon those who execute it, as was held in the case cited from Missouri and other like cases. If the sureties saw proper to bind themselves without the principal executing the bond and becoming bound, we think they might do so, and their undertaking is one that may be enforced in the courts by an appropriate action. The fact that the principal obligor in this case failed to sign the bond was a mere technicality, which ought not to affect the rights of any of the parties concerned. In what way are the sureties injured by the omission of the principal obligor to sign the bond? If they are compelled to pay the trustees any sum of money on account of the default of the treasurer, they can recover the amount back from him whether he signed the bond or not. So far, then, as they are concerned,

they are in as good a position as if Reitz, the treasurer, had properly executed the bond.  If Reitz is insolvent, a judgment in favor of the trustees against him could be of no benefit to the sureties.  If, on the other hand, he is solvent, the sureties can collect from him whatever sum they may be required to pay in consequence of executing the bond.''  With that conclusion we agree.

2. Did the failure of the district judge to approve the second bond operate to discharge the surety?  Some of the earlier cases would have answered this query in the affirmative.  (*Postmaster General* v. *Norvell,* Gilp. 103, 19 Fed. Cas. 1103; *Fletcher* v. *Leight,* 4 Bush (Ky.), 303.)  But it may be fairly said that the unanimous opinion of the courts of late has been to the contrary.  In *Commissioners* v. *McCormick,* 4 Mont. 115, 5 Pac. 287, this court, without giving any reason for its conclusion and without reference to the authorities upon the subject, held that the date of the approval of an official bond fixes the date at which the liability of the sureties begins.  But, whatever may be said of that decision in view of the statute then in force, it does not have any application to the present case in view of our curative statute.

In 1850 the state of California adopted a statute referring to official bonds, as follows: ''Whenever any such official bond shall not contain the substantial matter, or condition or conditions required by law, or there shall be any defects in the approval or filing thereof, such bond shall not be void so as to discharge such officer and his sureties, but they shall be equitably bound to the state or party interested, and the state or such party may, by action instituted as other suits on official bonds, in any court of competent jurisdiction, suggest the defect of such bond, or such approval or filing, and recover his proper and equitable demand or damages from such officer, and the person or persons who intended to become and were included as sureties in such bond.''  This statute was carried forward with slight changes which did not affect the substance, and is now section 963, Political Code of California of 1897.  In *People* v. *Ed-*

*wards,* 9 Cal. 286, the court was considering an action against the sureties on an official bond, and said: "The defect in the approval of the bond, if any existed, could not avail the defendants. The object of requiring the approval is to insure greater security to the public, and it does not lie in the defendants to object that their bond was accepted without proper examination into its sufficiency by the officers of the law." After quoting the section of the statute above, it further observed: "It is evident from the language of this section that the defects which are cured upon their suggestion in the complaint are omissions which, but for the statute, would operate to discharge the obligors." Citing the same statute, the court, in *People* v. *Evans,* 29 Cal. 430, held that the sureties on an official bond were not released even though the bond was approved by the wrong officer, which, in effect, amounted to no approval at all. This was followed in *Mendocino County* v. *Morris,* 32 Cal. 145. In *People* v. *Huson,* 78 Cal. 154, 20 Pac. 369, the court, relying on the statute above and the three cases just mentioned, said: "The settled rule is that the failure of the proper officers to approve an official bond will not invalidate it nor release the sureties from their liability upon it." All of these California cases were decided prior to the adoption of our Code of 1895. In 1895 our legislature passed section 1066, Political Code of 1895 (Revised Codes, sec. 393), borrowing the language in terms from section 963 of the California Political Code above, and, upon the familiar principle repeatedly announced by this court, we will assume that in so adopting the section our legislature intended that the construction theretofore given it by the highest court of California should be the rule for the guidance of the courts of this state in applying the statute (*McQueeny* v. *Toomey,* 36 Mont. 282, 122 Am. St. Rep. 358, 92 Pac. 561; *State Savings Bank* v. *Albertson,* 39 Mont. 414, 102 Pac. 692), unless it appears that the decision of the foreign court was based on unsound reasoning or the application of the decision would lead to a denial of a substantial right. (*State* v. *Mott,* 29 Mont. 292, 74 Pac. 728.) In the present instance we think the California

court correctly expressed the legislative will in its interpretation of the statute, and that our legislature intended that the statute should cover just such a case as the present one. Invoking here the rule announced by the California court above, it follows that the failure of the district judge to approve the bond did not work a release of the surety.

We think sufficient facts are stated in each cause of action to sustain the judgment.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

