(Opinion published 55 N. W. Rep. 1112.)

---

MINNIE M. VAN NORMAN *vs.* CHARLES F. BARBEAU *et al.*

Argued by appellant, submitted on brief by respondents, June 23, 1893. Reversed Aug. 3, 1893.

**Patent Right as Consideration for a Bond.**

In order to sustain the defense of want of consideration in a contract for the sale of a patent right it is not enough that its practical utility be limited, or that the patented article cannot be manufactured and sold at a profit, if it be capable of use.

**Bond not Executed by One of Several Sureties Named in it.**

Where one of several sureties named in a bond neglects or refuses to sign the same, if all the others sign it with the principal obligor, and the same is unconditionally delivered to the obligee in their presence, and without objection on their part, they will be deemed to have waived the omission to procure the signature of the remaining surety.

Appeal by plaintiff, Minnie M. Van Norman, from an order of the District Court of Hennepin County, *Thomas Canty,* J., made February 14, 1893, denying her motion for a new trial.

Luther C. Farmer obtained Letters Patent No. 399,860 in 1890 for improvements in weighing-scales. He sold a fourth interest to the plaintiff and another fourth to J. H. White. On March 9, 1891, they licensed Charles F. Barbeau to manufacture and sell the scales and use any improvements Farmer might invent. He agreed to pay them therefor one dollar upon each set of scales made under the license, and further agreed that these license fees should amount to $3,000 the first year; $6,000 the second and third years; $7,000 the fourth year; and $8,000 each year thereafter during the life of the patent. To secure the performance of this contract during the first year a bond in the penal sum of $3,000 was made to the three owners. The obligors named in it were Charles F. Barbeau, Joseph Menard, Joseph Barbeau, A. J. Menard, David Gagne, George Gagne and Peter Gagne. They all executed the bond except Joseph Barbeau. He refused, but the others, having signed, delivered it to the obligees, with Joseph Barbeau's name remaining in the body of the bond as one of the obligors, but without his signature. The scales proved to be impracticable in Barbeau's hands, and none were made or sold. Farmer and White settled with the obligors, and released them from all obligation to them. The plaintiff then brought this action against the obligors who signed the bond to recover of them $750, claiming to own one-fourth interest in the patent and in the bond. She made Farmer and White defendants with the obligors, and asked that they be excluded from sharing in her recovery. The defendants answered that the patent right was of no utility and was utterly worthless, and the bond without consideration. They also claimed that the bond was not fully executed, and for that reason never became their obligation. On the trial the Judge charged as follows:

"The sureties on the bond claim that it was agreed when the bond was made that Joseph Barbeau should sign it, and that it should not be considered a bond, or that they would not be liable, unless Joseph Barbeau did sign it. Now, I charge you that if that was the agreement between Charles F. Barbeau, the principal in the bond, and the sureties, that Mrs. Van Norman is bound by it, whether she knew it or not. Because the name of Joseph Barbeau is written in the body of the bond as a surety, and that was a circumstance

to put her on her guard when she received the bond, and she took it at her peril as to whether that defense existed or not, and the sureties are not estopped to show it."

The jury rendered a verdict for defendants. The plaintiff moved for a new trial. Being denied, she appeals.

*Babcock & Garrigues,* for appellant.

This invention contained a new and valuable principle. There was some lack of perfection, arising perhaps from faulty construction, or some detail not fully worked out.

Knowing the scale to be incomplete for all purposes, Barbeau assumed the responsibilities of the contract, gave the stipulated bond, and took upon himself the chances of whether or not, from the exercise of the rights given him by that contract, would accrue to him any profit. *Wilson* v. *Hentges,* 26 Minn. 288; *Palmer's Appeal,* 96 Pa. St. 106; *Deane* v. *Hodge,* 35 Minn. 146.

The burden of proof was clearly upon the defendants to establish the nonutility of the scale, and yet not one of their witnesses would, under the most careful and insinuating coaching of counsel, unqualifiedly pronounce this scale worthless. This it was necessary for some one to do, if this defense was to be sustained. *Nash* v. *Lull,* 102 Mass. 60; *Howe* v. *Richards,* 102 Mass. 64.

The bond having been delivered absolutely to the obligees in presence of all the persons who had signed the same, defendants were estopped to deny liability, notwithstanding the failure of Joseph Barbeau to sign the same as surety. The leading case in this country, on which all the cases rest, where sureties have been allowed to give evidence of a delivery in escrow, upon condition that some person named in the bond should also execute the same, and that the bond should not take effect until that person signed, is *Pawling* v. *United States,* 4 Cranch, 219. There the sureties established, by uncontradicted evidence, a delivery of the bond upon condition, that two other persons whose names appeared in the instrument, were to execute it, and that when so executed the bond should be delivered as their deed, and not otherwise. The bond was never so executed, but was delivered to the said Morrison on

behalf of the United States without the knowledge or consent of the sureties. It was held that the sureties were not estopped to avail themselves of the condition annexed to their delivery. *State* v. *Peck*, 53 Me. 284; *Cutler* v. *Roberts*, 7 Neb. 4; *Guild* v. *Thomas*, 54 Ala. 414. The bond in this case was not delivered in escrow, but absolutely, and in the presence of the sureties. Granting that the evidence of the defendants, if true, shows that they expected Joseph Barbeau to sign the bond as surety, and they would not have signed otherwise, they are still liable, and to contend the contrary is not only against precedent, but mischievous beyond endurance. *Russell* v. *Freer*, 56 N. Y. 67; *Hurd* v. *Kelly*, 78 N. Y. 588; *Whitford* v. *Laidler*, 94 N. Y. 145; *Whitaker* v. *Richards*, 134 Pa. St. 191; *Sidney Road Co.* v. *Holmes*, 16 Upper Can. Q. B. 268; *Scott* v. *Whipple*, 5 Greenl. (Me.) 336; *Duncan* v. *United States*, 7 Pet. 435; *Cutter* v. *Whittemore*, 10 Mass. 442; *Johnson* v. *Weatherwax*, 9 Kan. 75.

We challenge counsel to refer us to a single well-considered case releasing the sureties from liability, where the evidence has not established that the bond was delivered in escrow, on condition that it should not take effect until some person named or not named therein had signed it.

*Penney, Jamison & Hayne*, for respondents.

Defendants do not question the proposition that, if a bond perfect on its face, is signed, sealed and in fact delivered by the principal and sureties to the obligees named therein, who without notice or knowledge of the conditions on which the sureties sign it, or of facts which would put a prudent person on inquiry with reference thereto, in good faith act upon it, the sureties are estopped to set up the alleged agreement and condition between them and the principal in defense. *Berkey* v. *Judd*, 34 Minn. 393. But the law as stated in the above-cited case is not applicable to this case for the reasons: The agreement between the principal and the sureties that Joseph Barbeau should also sign the bond as a surety was made in the immediate presence of all the obligees therein. It is clear that if such an agreement was made the obligees must have heard it and knew of the condition upon which the sureties executed it,

and that such condition had not been complied with. The doctrine of estoppel cannot be applied to such a state of facts. The bond was also imperfect on its face, which, of itself and without actual notice of the conditions upon which the sureties executed it, was sufficient to put the obligees on inquiry as to why Joseph Barbeau had not executed it, and such inquiry would have disclosed the true condition upon which the defendant sureties executed it.

In any case, if the bond is so written that it appears that several were expected to sign it, the obligee takes it with notice that the obligors who do sign it can set up in defense the want of execution by the others, if they agreed to become bound only on condition that the other co-sureties joined in the execution. *Dair* v. *United States*, 16 Wall. 1; *Wells* v. *Dill*, 1 Mart. (N. S.) 592.

VANDERBURGH, J. The plaintiff and Luther C. Farmer and J. H. White, owners of letters patent for improvements in weighing scales, on the 9th day of March, 1891, entered into a certain license contract with the defendant Charles F. Barbeau, described in the complaint, in and by which he was granted the exclusive right to manufacture and sell the scales therein described, and all the improvements owned or controlled by the parties of the first part, and in consideration of which he agreed to pay certain royalties upon the number of machines mentioned during the life of the patent, and thereby agreed to pay a royalty of $1 each on at least 3,000 scales to be manufactured during the first year after the execution of the contract; and for the purpose of securing the performance of the agreement to pay such royalty for the first year Barbeau and the other defendants in this action executed their bond, also described in the complaint, and running to the plaintiff and Farmer and White, the parties of the first part in the contract first described. It appears that Farmer and White have adjusted their claim under the contract and bond with the defendants, and that the interest of the plaintiff in the royalty secured by the bond is one-fourth thereof, which this action is brought to recover.

The defenses set up in the answer are: *First*, (a defense in favor of all the defendants,) that the contract and bond are without consideration, on the ground that the patent and alleged improve-

ments in question are of no utility, and that the scales manufactured thereunder were and are practically useless; and, *second*, in respect to the liability of the sureties in the bond, that one Joseph Barbeau, who was named therein as surety, and who, as it was agreed and understood between the plaintiff and remaining sureties should sign the same, did not execute it or become a party thereto.

1. The rule applicable to a defense of want of consideration in a contract for a license to manufacture and sell articles under a patent right is thus stated in *Wilson* v. *Hentges*, 26 Minn. 290, (3 N. W. Rep. 338:) "If the patent be valid, the right to sell the article is exclusive, and is, in law, a valuable right, although it may not, in fact, be a profitable one; and, as one may pay or agree to pay what he pleases for such a right, the grant of it to him is a valid consideration for his promise to pay for it. When, therefore, it is sought to impeach a contract as without consideration, on the ground that the consideration was the grant of a right to sell a patented article, and that the article is useless, it must be shown that it is useless in the sense that will avoid the patent." And it is not enough that its practical utility be very limited, or that it will be of little or no profit to the inventor. "The law does not look to the degree of utility. It simply requires that it should be capable of use, and that the use be such as sound morals and policy do not discountenance or prohibit." The fact that the patented article may or may not be salable at a profit is not to be considered in determining the question of the utility or validity of the patent for the purposes intended by the patentee, and within the rule laid down in *Wilson* v. *Hentges, supra,* the question of the popularity of the invention or the measure of the pecuniary profit which may be derived from the manufacture and sale thereof is not material in determining the question involved in this case. *Lester* v. *Palmer,* 4 Allen, 145. It did not conclusively appear from the evidence that the patented invention was impracticable or useless; that is to say, that it might not be applied to some beneficial purposes. There was evidence tending to show that the scale would be of practical use for light weighing, and would work accurately for such purposes. The court, however, instructed the jury, among other things, upon this branch of the case, that they must "consider

whether the machine can be sold for what it costs to make it, whether people will buy and use it," and also "what practical use can be made of it in manufacturing machines for a profit." This was error, and presumptively prejudicial to the plaintiff.

2. On behalf of the sureties, the answer alleges that at the time of the execution of the bond referred to it was agreed by and between the principal and sureties therein and by and between the defendants and the obligees in the bond that one Joseph Barbeau should also sign the same as surety, and that the other sureties should not be liable thereon, nor should the same be delivered, unless he also signed the same as surety. His name was in fact inserted in the bond as one of the sureties, but he did not at any time execute the same. The evidence in behalf of the defendants tends to show that the sureties understood that Joseph Barbeau was also to sign as surety, and that, as between themselves, they executed the same on that condition; also that the bond was delivlivered to Farmer, one of the obligees therein, at the time of the execution thereof, and that all the defendants were then present. The evidence also tends to prove that the conversation among them in respect to Joseph Barbeau becoming surety with them was in the presence of the obligees, Farmer and Van Norman. But the latter both testify, in substance, that they were not cognizant of any such understanding or condition, and that nothing of that kind was said to them or in their presence, and that the bond was executed in their presence by all the defendants, and delivered to them unconditionally. If this is true, and the defendants delivered the bond to the obligees without insisting upon its execution by Joseph Barbeau as a condition of its becoming operative in the hands of the obligees, or any notice to them to that effect, then it took effect immediately upon its delivery, and such delivery may be deemed a waiver of any such condition. It is clear that the sureties might waive the execution of the bond by Barbeau, and in that case it would not be material that his name was included in the instrument with the other parties thereto; hence, under the state of the evidence, it was error for the court to charge the jury that if it was agreed between Charles F. Barbeau and the sureties that Joseph Barbeau should sign it, and that they should not be liable unless he signed it, the plaintiff was bound by such agreement whether

she knew of it or not, for the reason that his name was also included in the bond.

There must, therefore, be a new trial, and the order denying it is accordingly reversed.

(Opinion published 55 N. W. Rep. 1112.)