BENJAMIN F. MARTIN *vs.* A. H. HORNSBY *et al.*

Submitted on briefs Oct. 20, 1893. Affirmed Nov. 8, 1893.

No. 8352.

**A bond signed by sureties but not by the principal.**

A bond purporting to be the joint and several obligation of one who is about to be commissioned as a notary public, as principal, and of others as sureties, but which has been executed by the sureties only, does not, upon its face, show any contract obligation on the part of such sureties.

**Evidence held not to show delivery of the bond by the sureties, or estoppel by conduct.**

Upon an examination of the evidence presented upon the trial of this case, it is *held* that said sureties had not, by their conduct, subjected themselves to liability upon the instrument, nor become estopped from questioning its validity because unfinished and incomplete.

Appeal by plaintiff, Benjamin F. Martin, from an order of the District Court of Ramsey County, *Charles D. Kerr,* J., made June 14, 1893, denying his motion for a new trial.

On August 7, 1885, defendant, A. H. Hornsby was appointed a notary public for Ramsey County for the term of seven years. He was required by 1878 G. S. ch. 26, § 2, as amended by Laws 1885, ch. 48, before entering upon the duties of his office to give a bond to the State in the penal sum of $2,000 with sureties to be approved by the Governor, conditioned for the faithful discharge of his duties as such officer. The defendants, Uri L. Lamprey and Charles W. Clark signed such a bond as sureties, but Hornsby omitted to sign it. The bond in this condition was inadvertently approved and his commission issued.

In June, 1892, Hornsby represented to the plaintiff that he was the agent of Antonia Wortman to sell for her the east thirty four (34) feet of lot nine (9) in block five (5) in Nelson's Addition to St. Paul. He produced and delivered to plaintiff a deed purporting to have been signed by her, on which he as such notary public certified under his hand and official seal, that she appeared before him on June 20, 1889, and acknowledged that she executed the deed

freely and voluntarily. Plaintiff paid Hornsby $600 for the property, but discovered afterwards that Mrs. Wortman never signed the deed or acknowledged the execution of it or received the money, and that Hornsby never was her agent or authorized by her to sell the property. Hornsby disappeared and plaintiff obtained leave under 1878 G. S. ch. 78, § 2, and brought this action in his own name upon the bond to recover his $600 of the sureties. On the trial the Judge instructed the jury to return a verdict for defendants. Plaintiff excepted and moved for a new trial. The Court refused, saying,

There are authorities that such a bond is void on its face. *Curtis* v. *Moss*, 2 Rob. (La.) 367; *Bean* v. *Parker*, 17 Mass. 591; *Wood* v. *Washburn*, 2 Pick. 24; *Bunn* v. *Jetmore*, 70 Mo. 228; *City of Sacramento* v. *Dunlap*, 14 Cal. 421. But I think when such a bond has been delivered by the sureties as the official bond of the principal without his signature or seal, under circumstances which constitute a waiver of the defect and it has been accepted and acted upon, the sureties are estopped to deny their liability. But where it is manifest that the sureties did not intend to be bound without their principal and have done nothing to estop themselves they cannot be held. *Kurtz* v. *Forquer*, 94 Cal. 91; *Hall* v. *Parker*, 37 Mich. 590; *Johnson* v. *Kimball*, 39 Mich. 187; *Goodyear D. V. Co.* v. *Bacon*, 151 Mass. 460; *Fletcher* v. *Austin*, 11 Vt. 447; *Wildcat Branch* v. *Ball*, 45 Ind. 213; *Smith* v. *Board of Supervisors of Peoria Tp.*, 59 Ill. 412.

In this case the sureties executed the bond with the expectation that it was to be executed by the principal also. They did not deliver the bond or consent to its delivery in the condition in which it appears. Its acceptance and approval by the Governor was a mistake and inadvertence. The bond is joint and several, but this does not affect the principle upon which the case turns. *State* v. *Austin*, 35 Minn. 51.

*H. H. Herbst*, for appellant.

In a joint and several bond the sureties are liable, even though the instrument is not signed by the principal. *Trustees of Schools* v. *Sheik*, 119 Ill. 579; *State* v. *Bowman*, 10 Ohio, 445; *Parker* v. *Bradley*, 2 Hill, 584; *Kurtz* v. *Forquer*, 94 Cal. 91; *County of Red-*

*wood* v. *Tower*, 28 Minn., 47; *Haskins* v. *Lombard*, 16 Me. 140; *Loew* v. *Stocker*, 68 Pa. St. 226; *Grim* v. *School Directors*, 51 Pa. St. 219; *Van Norman* v. *Barbeau*, 54 Minn. 388.

*Charles N. Bell* and *George E. Budd,* for respondents.

A surety is never bound to any greater extent than is his principal. This instrument is imperfect on its face and shows that it was never intended to be delivered in its present condition. It is absurd to think that the sureties so intended and it ought to require convincing testimony to prove an intentional delivery without the signature of the principal. *State* v. *Austin*, 35 Minn. 51; *Board of Education* v. *Sweeney*, 1 S. Dak. 642; *Wildcat Branch* v. *Ball*, 45 Ind. 213; *Johnston* v. *Kimball*, 39 Mich. 187; *Fletcher* v. *Austin*, 11 Vt. 447; *People* v. *Hartley*, 21 Cal. 585; *City of Sacramento* v. *Dunlap*, 14 Cal. 421; *Ferry* v. *Burchard*, 21 Conn. 602.

COLLINS, J.   The question of law presented in this appeal is whether the sureties named in, and who signed, an instrument designed to be the bond required, under 1878 G. S. ch. 26, § 2, of a person about to be appointed a notary public, are bound by its conditions when the principal has failed to sign the same. The instrument purported to be the joint and several obligation of "A. H. Hornsby as principal, and U. L. Lamprey and Chas. W. Clark as sureties." It was conditioned that "the above-bounden A. H. Hornsby" should faithfully discharge the duties of a notary. Through inadvertence in the office of the chief executive, the failure on the part of the principal to sign the purported obligation was overlooked. It was approved, and a commission issued.

The statute above referred to clearly contemplates the execution of a bond, with the appointee as the principal, and with sureties; and this is more apparent when we read, in connection, the first three sections of 1878 G. S. ch. 78, which authorize and provide for the bringing of actions upon official bonds. So the bond in question was not executed in compliance with the law, but was unfinished and incomplete. Speaking of a somewhat similar instrument, this court said, in *State* v. *Austin*, 35 Minn. 51, (26 N. W. Rep. 906,) that: "Upon its face, the bond appears to be incomplete. It was not the

obligation of the principal named. It did not, so far as appears, bind the sureties, because, as appears from the instrument, the obligation which they assumed was that of sureties for another, who was to be the principal obligor. It was not, therefore, of effect, as the bond of even those who executed it." This language is in point here, and, in addition to cases there noted, attention may be called to *Curtis* v. *Moss*, 2 Rob. (La.) 367; *Board of Education* v. *Sweeney*, 1 S. Dak. 642, (48 N. W. Rep. 302,) and cases cited. *Prima facie*, the instrument now being considered was incomplete and invalid, and was not binding upon those who signed it as sureties. Nor can we see that a distinction can be drawn between bonds which are simply joint, and those which are joint and several, as was that in controversy. The doctrine upon which all of the cases before referred to are rested will not admit of such a distinction, nor is it suggested in the leading case on the other side cited by counsel for appellant. *Trustees of Schools* v. *Sheik*, 119 Ill. 579, (8 N. E. Rep. 189.)

This brings us to a consideration of the only remaining point. It was remarked in the *Austin* Case that "it may be that persons executing such an instrument, which, upon its face, appears to be incomplete, may, by their own conduct, subject themselves to liability thereon, or become estopped from questioning the completeness of the instrument."

Of course, no one can doubt that if sureties see fit to bind themselves absolutely, in any manner, without the signature of the principal, although named as such in the bond, they may do so, precisely as sureties may bind themselves although one of their number named as such in the obligation has refused to sign it, as was the case in *Van Norman* v. *Barbeau*, 54 Minn. 388, (55 N. W. Rep. 1112.) So we now have to inquire whether, by their conduct, these sureties have in any way concluded themselves from denying a liability upon the instrument which they signed. From the evidence, it appears that a printed note of instructions was appended to the blank bond. By this, the applicant for appointment was informed that the bond must be signed by himself as principal, with at least two sureties. Hornsby was a real-estate dealer, and requested Lamprey and Clark to become sureties upon the bond in question, informing each that the other had agreed so to do. At his request, Clark went to Lamprey's office, where the blank was. Clark there wrote, in the body

of the bond, the three names "A. H. Hornsby," "U. L. Lamprey," and "Chas. W. Clark," as they appear in the first quotation herein. Hornsby was not present. Clark signed the instrument in the presence of a notary public then in Lamprey's employ, and went away, leaving it with the notary. Shortly before or after this, Lamprey signed the bond in the presence of Hornsby and the notary, at the same time calling Hornsby's attention to the requirements, as contained in the appended note; stating to him that he must sign it as principal, and that without his signature it would be worthless. Lamprey, being called away, immediately left his office. Both of these sureties expected that the bond would be signed by Hornsby as principal, and to some extent relied upon their knowledge of the custom respecting such bonds, and the manner in which they were usually required to be executed. They knew nothing of a delivery of this instrument, nor did they know of its incomplete and unfinished condition until after the transaction out of which came this litigation. On these facts, we are unable to see how the sureties have precluded themselves from asserting the invalidity of the obligation. There was no conduct on their part which should prevent them from taking advantage of the incompleteness of the bond, or which should estop them from insisting that there was no contract on which they are liable.

It is the admitted fact that both of these sureties had more or less knowledge, later on, that Hornsby was acting as a notary public, but, as before stated, they were not informed of his delivery of the bond without having signed it as principal. Had they been so informed, and then allowed him to exercise the duties of a notary, it is possible that they might not have escaped the consequences of his misconduct.

We think it manifest, from the whole case, that the sureties did not intend to be bound on the instrument unless it was also executed by the principal named therein, nor was it the intention of the chief executive of the state to accept it without such execution, and, further, that the sureties have not precluded nor estopped themselves from taking advantage of the omission.

Order affirmed.

(Opinion published 56 N. W. Rep. 751.)

Application for reargument denied November 21, 1893.