BANKERS SURETY COMPANY, Appellant, v. ARTHUR H. WYMAN ET AL., Appellees.

**Estates of decedents:** SURETIES: CONTRIBUTION: NEW BOND: PRIMARY LIABILITY. While the giving of a new executor's bond does not ordinarily of itself release the old one, but the sureties thereon are treated as co-sureties and are liable to each other for contribution in proportion to their respective liability, still a new bond may be given under such circumstances that the sureties thereon

undertake a primary liability: as where the surety on the original bond was the husband of the testatrix who died and his estate was about to be settled and distributed, and the obligees as beneficiaries of the husband's estate were thus in effect sureties for themselves as beneficiaries of their mother's estate, the new bond being given under an order of court directing its filing and a discharge of the sureties on the old one to which no exception was taken, the obligation of the new surety became the primary and only liability as such.

**Same:** NEW BOND: APPLICATION FOR. Where an estate is pending and unsettled and the executor is required by an order of court to give a new bond because of the death of the surety on the old bond, it is not material to the proceeding that the heirs appear and make application therefor.

**Same:** DISCHARGE OF OLD BOND. The giving of a new executor's bond in compliance with an order of court is an assent to the further provision of the order discharging the old one upon filing the new one.

**Same:** NOTICE. The surety on an executor's bond given in conformity with an order of court is required to take notice of matters contained in the order.

**Sureties:** CONTRIBUTION: LACHES. The surety on an executor's bond must guard his own right to contribution from prior sureties, as this duty does not devolve upon the beneficiaries of the estate: and where he neglects to do so he will lose any right he may have had by laches.

**Supersedeas bond:** ENFORCEMENT OF JUDGMENT: INJUNCTION. Upon the rendition of a judgment against an executor the surety on his official bond agreed to indemnify another surety on his *supersedeas* bond given to perfect the appeal, in which the *supersedeas* surety agreed to perform the judgment of the supreme court. *Held,* that the liability of the *supersedeas* surety was primary and operated to the benefit of the surety on the executor's bond; and the judgment having been affirmed the surety on the executor's bond had no such interest in the matter as would authorize it to enjoin the collection of the judgment from the *supersedeas* surety.

**Suretyship:** SUBSTITUTION: CONTRIBUTION Where the surety on an executor's substituted bond gave an indemnifying bond to secure the executor's surety on a *supersedeas* bond, such indemnifying bond was not binding on the estate of the first surety, even if the estate was liable to the substituted surety for contribution.

**Same.** Contribution between sureties is not dependent upon privity or knowledge, and the sureties need not be parties to the same

instrument; but it is essential that they be bound by the same principal and for the performance of the same duty.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

THURSDAY, MARCH 11, 1909.

ACTION in equity to enjoin the collection of a judgment against a surety. There was a decree in the lower court dismissing the petition. The plaintiff appeals.— *Affirmed.*

*B. J. Cavanaugh* and *Parker, Hewitt & Wright,* for appellant.

*Crom Bowen* and *Henry H. Griffiths,* for appellees.

EVANS, C. J.—On the face of it, this case is very complicated in its facts and legal questions. A condensed statement of the pleadings alone covers seventy-five printed pages in the abstract, and the case is submitted to us upon briefs covering more than three hundred and fifty pages. At the heart of it, however, there is less complication. It involves the question whether a surety on a new executor's bond, ordered by the court for the stated purpose of discharging the original bond because of the death of the surety thereon and the pendency of his estate in probate, may nevertheless require contribution from the estate of the surety on the first bond; and, if so, whether such contribution may be worked out after the closing of such first surety's estate through the beneficiaries thereof, such beneficiaries being also the obligees and beneficiaries of the bond of the last surety. It involves the question, also, whether a supersedeas bond, filed by the executor on appeal to the Supreme Court, from the judgment of the lower court fixing his liability, is primarily liable for the

amount of the judgment upon affirmance; and, if so, whether the surety on the new executor's bond has any interest as such in enjoining the surety on the supersedeas bond from paying the judgment, it being made to appear that such surety on the supersedeas bond holds an indemnifying bond, executed by the complainant surety; such indemnifying bond having been executed by the complainant surety in order to enable the executor, its principal, to stay proceedings on appeal to the Supreme Court, and before any payment had been made by the surety itself, and before any judgment had been rendered against it. To put the question in another way, if the complainant surety must answer the call of its indemnifying bond to the surety on the supersedeas bond, can it enforce contribution against the surety on the original executor's bond?

On or about May, 1883, one Lewis was appointed by the district court of Polk County as executor of the estate of L. S. Wyman. He executed a bond for $5,000, with John Wyman, surviving husband of L. S. Wyman, as his surety. Mrs. Wyman left as the beneficiaries of her estate an infant son, Arthur Wyman, and two daughters, Anna and Nettie, who will be referred to in this opinion as the Wyman heirs. The estate was kept open and pending until the youngest child should become of age, which majority occurred shortly prior to May, 1904. In the meantime, in May, 1903, John Wyman died testate, in Polk County, leaving surviving him his widow, Bina M., and the three children of L. S. Wyman, already named, and Mabel Wyman, a daughter of the second marriage, all of which were left as beneficiaries of his estate. Defendant Bowen was appointed by the district court of Polk County as executor of his will soon after his death. In pursuance of section 3268 of the Code, the clerk of the district court, in January, 1904, noted his disapproval of the executor's bond in the L. S. Wyman estate, because of the death of the surety and because his estate was being

administered, and placed the "matter upon the calendar of the court at the next term for a proper order." On June 25, 1904, in response to the disapproval of the clerk, the executor filed a report. On the same day the court entered an order "that a new bond be given by the executor in the sum of seven thousand dollars, to be approved by the clerk of this court. And upon the filing of such bond the old bond is released and discharged." In pursuance of said order, the executor procured a new bond for $7,000 with the Bankers' Surety Company, complainant herein, as his surety, and the same was then and there filed and approved by the clerk. On November 9, 1904, the executor filed a purported final report. On December 2, 1904, exceptions were filed to it by the Wyman heirs. December 16, 1904, the executor filed an amended report. December 30, 1904, further exceptions were filed by the heirs. This was the beginning of a controversy between the Wyman heirs and the executor, Lewis, as to the amount with which he should be charged as such executor. This controversy culminated in a judgment entered by the court on September 10, 1906, holding the executor liable in the sum of about $6,000. From this judgment an appeal was perfected by the executor Lewis to the Supreme Court on October 5, 1906, no *supersedeas* bond being then filed. In the meantime the estate of John Wyman had been fully administered upon and was closed in due form, and the executor discharged on May 25, 1905. On December 28, 1906, the Wyman heirs filed an application for judgment on the bond against the complainant surety company, in pursuance of section 3361. On January 25, 1907, the complainant surety filed its petition in equity in the case at bar, asking that the Wyman heirs be enjoined from prosecuting their summary proceeding under section 3361. The contention urged was that John Wyman was a co-surety with the complainant and liable to contribution, and that the Wyman heirs had received all of

his estate, and that they had therefore been fully indem-
nified by reason of his suretyship, and that they were not
entitled to recover again from the complainant surety;
but if such contention be not sustained, then that the com-
plainant surety was entitled to contribution from the estate
of John Wyman, and that such contribution should be
charged against the Wyman heirs as the beneficiaries of
his estate.   Substantially the same matters were set up in
defense to the application of the Wyman heirs for a sum-
mary judgment.

On February 16, 1907, the executor, Lewis, filed a
*supersedeas* bond in his appeal to the Supreme Court, and
thereby stayed all proceedings pending the appeal.   There-
upon the Wyman heirs dismissed without prejudice their
application for summary judgment, and all proceedings
in the lower court slept for the time being.   On May 8,
1907, the judgment of the lower court was affirmed on
appeal, the appellant having failed to file an abstract with-
in the statutory time, and judgment was then entered
against the United States Fidelity & Guaranty Company,
the surety on the *supersedeas* bond.   Upon this judgment
execution issued.   Thereupon, on May 11, 1907, the com-
plainant, Bankers' Surety Company, paid in to the clerk
of the district court the amount adjudged against the *super-
sedeas* bond in the Supreme Court, and at the same time
filed an amendment to its petition, making the clerk of
the district court and the sheriff of Polk County, and
the clerk of the Supreme Court, all parties defendant,
and asking for a temporary injunction to restrain the col-
lection of the judgment of the Supreme Court upon the
*supersedeas* bond, and to restrain the clerk of the district
court from paying out to the Wyman heirs ·the money
which the complainant had itself paid in. ·  It obtained a
temporary injunction to this effect, which was continued
in force until the hearing of the case upon its final merits.
In this amendment the complainant Bankers' Surety Com-.

pany also alleged an interest in restraining the collection of the judgment against the United States Fidelity & Guaranty Company as surety on the *supersedeas* bond, in that it had executed an indemnifying bond to the said United States Fidelity Company to protect it against such payment. It should have been stated earlier in this narrative that the complainant became a surety on the executor's bond for hire, and that the cost of such surety-ship was charged and allowed against the estate, and therefore borne by the Wyman heirs, its beneficiaries. This will suffice for the present as a brief statement of the controlling facts in the case.

I.     The appellee challenges the regularity of the procedure adopted by the complainant, in that it has resorted to most extraordinary remedies. We will pass that

1. ESTATES OF DECEDENTS: sureties: contribution: new bond: primary liability.

question for the present. It is undoubtedly true that the giving of an additional bond by an executor does not ordinarily, in and of itself, release a prior bond. It is also true that, where successive bonds remain in full force and effect the sureties thereon may be deemed as co-sureties and be liable to each other for contribution in proportion to their respective liabilities on their respective bonds. It does not follow, however, that a surety on a new bond may not undertake a primary liability, and we think that is the position of the complainant surety in this case. The circumstances which called for the new bond are somewhat out of the ordinary. The surety on the original bond was dead. His estate was about to be distributed and closed. The beneficiaries and obligees of the original bond were also beneficiaries and distributees of the John Wyman estate. If there should be any default on the part of the executor, the estate of John Wyman would be liable for it, and the amount of such liability would of course reduce the amount to be distributed to its beneficiaries. In a sense, therefore, the Wyman heirs, as beneficiaries of their

father's estate, were sureties to themselves as beneficiaries of their mother's estate. The real net result of such a situation was that they were left without a surety on the executor's bond. This was the situation observed by the clerk while acting under the provisions of section 3268 of the Code. This was the situation which confronted the district court when it was called upon under this section of the statute to make a "proper order."

The fact that the Wyman heirs did not personally appear in the proceedings, nor make any application in their own behalf, is to our minds quite immaterial. The estate was pending and unsettled, and, while so pending and unsettled, they were the wards of the court. The executor was presumably notified and was in court. The order made was directed to him. It required that he file a new bond to the amount of $7,000 to be approved by the clerk. It further ordered then and there that upon the filing of such bond the old bond be released and discharged. The executor took no exception to this order. The beneficiaries themselves have never complained of it. In compliance with this order, the executor executed a new bond and hired the complainant to become surety thereon. At the time the complainant became such surety, the order of the court releasing and discharging the old bond was a matter of record in the case. The presentation of the new bond in compliance with such order of the court must be deemed as a consent to the conditions of such order. It was entirely voluntary on the part of the complainant surety. It fixed its premium in accord with the liability incurred. The obligees of its bond were the beneficiaries of the L. S. Wyman estate; the undertaking was entered into expressly for their benefit. The cost of it was borne by them. In reliance upon this bond, the executor was permitted to continue in charge of the estate, and the John Wyman estate

*2. SAME: new bond: application by heirs.*

*3. SAME: discharge of old bond.*

proceeded to its final distribution. To say now, as the appellant does, that these Wyman heirs should be deemed to have continued as their own sureties by reason of their interest in their father's estate, and that they should be deemed to have been fully indemnified by reason of having received their father's estate, is a most inconsistent position. If this position be correct, it was an idle and expensive ceremony for the court to require a new surety at all. The position contended for is contradictory to the very terms of the bond, in that the bond by its terms purports to be made for the benefit of the very persons who are now claiming thereunder. If they have no right to do so now, then the bond was nugatory from the beginning. The interest and ownership of these beneficiaries in the John Wyman estate existed at the time this bond was executed. If this fact is a defense to the bond now, it was a defense to it when it was made.

True, the appellant charged fraud. But the evidence does not furnish the slightest support for this charge. It is quite apparent from the record that the heirs had no

4. SAME: notice.

apprehension or ground of apprehension of any future difficulty between them and the executor, nor do we think that the executor had any apprehension of any such difficulty. It is not claimed by either side that the executor was guilty of any fraud. He was confessedly without property, and so stated in his application to the appellant. Complainant's alleged ignorance of the state of the record can not be considered; it had no right to be ignorant in that respect, nor did the obligees of the bond have any knowledge of its ignorance. We hold, therefore, upon this branch of the case, that the complainant surety must be held to have undertaken a primary liability, and that it can not contradict the terms of its bond by claiming contribution from the obligees thereof, and, as to it, the original bond must be deemed discharged. And this is so, regardless of whether the action of the

court in ordering such discharge was regular or not.   For the purpose of this case, such action of the court must be deemed a "proper order" within the meaning of section 3268.   *Wilborne v. Commonwealth*, 5 J. J. Marsh. (Ky.) 617.

We may say, further, that we see no equitable circumstances proved in this case which would justify the opening up of the John Wyman estate for the purpose of enabling the plaintiff to prove a claim for contribution against it.   If it had a right to contribution, it lost it by its own neglect.

5. SURETIES: contribution: laches.

The report of the executor was challenged by the heirs by written exceptions filed six months prior to the closing of the John Wyman estate.   The beneficiaries of that estate owed no affirmative duty, as argued by counsel, to protect appellant against the contingency of liability for contribution.   It devolved upon the defendant itself to guard its right of contribution, if it had any.   *Fidelity Co. v. Bowen*, 123 Iowa, 356; *Ellyson v. Lord*, 124 Iowa, 125.

II.   If we should assume that the appellant surety company had a right of contribution against the John Wyman estate, has it any right as such surety to enjoin the collection of the judgment against the executor from the United States Fidelity Company, the surety on the *supersedeas* bond?

6. SUPERSEDEAS BOND: enforcement of judgment: injunction.

It is clear to us that it has no ground to stand upon at this point.   The *supersedeas* bond, to all legal intent, was filed by the executor to stay proceedings pending the appeal.   By its very terms the surety thereon undertook to perform such judgment as the Supreme Court should order.   The liability of the surety on the *supersedeas* bond is primary, and operates to the benefit of the surety on the executor's bond.   If the judgment can be collected, either from the executor or from his surety on the *supersedeas* bond, it will relieve the surety on the executor's bond of all liability; nor can contribution be de-

manded from it by a *supersedeas* surety. *Fidelity Co. v. Bowen,* 123 Iowa, 356. It is manifest, therefore, that, as a mere surety upon the executor's bond, the appellant has no interest to subserve by enjoining the collection of the judgment from the surety on the *supersedeas* bond.

It appears, however, that, before the surety of the *supersedeas* bond entered into its undertaking, the appellant entered into an undertaking with it, agreeing to indemnify it against loss. It is its liability on this bond which creates an interest in the appellant adverse to the collection of the bond from the United States Fidelity Company. But this undertaking is entirely distinct from the executor's bond, signed by it July 25, 1904. If the John Wyman estate had been liable to contribution as a co-surety, it had a right, nevertheless, to rely upon the *supersedeas* bond filed by the executor. If the appellant entered into a new undertaking and undertook a new obligation, the John Wyman estate was not bound by that undertaking.

7. SURETYSHIP: substitution: contribution.

Appellant's argument is that it was its duty to use its utmost efforts to reverse the judgment obtained against the executor, and that it executed the indemnifying bond in pursuance of such duty. If that argument should be deemed sound, it would be quite fatal to the plaintiff in this case. If it owed the duty to use its best efforts to secure a reversal of the judgment against the executor, it signally failed in that duty. It failed to file an abstract within the time allowed for that purpose, so that no review of the case was possible here. But the argument is not well taken. As between it and the co-surety, it could not change the nature of its liability and still maintain its right of contribution. While it is true that the right to contribution between sureties is not dependent upon privity or knowledge, nor need they be signers upon the same instruments, it is essential for the purpose of contribution that the sureties be bound

8. SAME.

for the same principal and for the performance of the same duty.

No judgment has been entered in this case against the appellant, nor are the beneficiaries of the bond pressing any proceedings against it. For the present they choose to rely upon the *supersedeas* bond. True, the appellant did of its own accord pay in to the clerk of the district court the alleged amount necessary to discharge the liability of the executor, but it immediately tied it there with a temporary injunction. That injunction having been dissolved by the decree of the lower court, and the judgment against the United States Fidelity Company being still in force in this court, the appellant urges that the beneficiaries will reap a double satisfaction of their judgment. We shall have little trouble in protecting the appellant by proper order against a double payment.

The Wyman heirs are not now proceeding against the appellant surety company. The real question before us is whether the plaintiff may maintain its manifold injunctions against the various officers of the district court and of this court, and whether it can restrain the collection of the judgment entered in this court against the surety on the *supersedeas* bond. We hold that it can not.

The trial court rightly dissolved all the injunctions and dismissed plaintiff's petition. Its decree is therefore *affirmed.*