# SOUTHERN SURETY COMPANY v. OLUF TESSUM AND OTHERS.[1]

Nos. 27,350, 27,352, 27,364, 27,384.

November 29, 1929.

[1]Reported in 228 N. W. 326.

496

 & 

 

*Perl W. Mabey* and *H. O. Chommie,* for appellants 

*Barrows & Stewart,* for appellant 

*Cobb, Hoke, Benson, Krause & Faegre* and *Tracy J. Peycke,* for appellant 

*Duxbury & Duxbury* and *Hopp & Larson*, filed a notice of appeal (No. 27,350) in behalf of defendants H. A. Daniels, I. B. Kinneberg and C. B. Christenson but filed no brief in this court.

*F. H. Durham* and *Arthur H. Lindeman*, for Southern Surety Company, respondent.

STONE, J.

Plaintiff, having paid certain judgments against it as surety for Miller Tessum, guardian of Margrethe Tessum, incompetent, brought this action to enforce contribution from defendant Oluf Tessum, coguardian with Miller, and the other defendants, also sureties for one or the other of the two guardians. The trial was without a jury, and plaintiff prevailed. In four groups, defendants appeal from an order denying their several alternative motions for amendment of the decision so as to require judgment in their favor or for a new trial. The appeal taken by defendants Daniels, Kinneberg and Christenson as sureties for Miller Tessum has not been argued and will not be discussed. The judgments paid by plaintiff and which are the subject matter of the case are those affirmed in Lyngen v. Tessum, 169 Minn. 304, 211 N. W. 314.

The estate involved was originally that of Elling Tessum. It consisted in the main of a farm of 119 acres, of which 80 were the homestead. Elling Tessum died in 1899. Surviving him as heirs were his widow, Margrethe Tessum, four sons, Oluf, William, Miller and Oscar, and a daughter, Mathilda Lyngen. Before any of the transactions presently involved, the widow, Margrethe, acquired by purchase the interest in the estate of the son William. She was adjudged incompetent in 1918, and Oluf and Miller became her guardians. They filed an inventory listing the farm as her property, although she had but a life interest in the homestead and only an undivided one-third of the remaining 40. In 1919 the farm was sold under license from the probate court for $27,013. The four children interested joined in the deed. They also signed a "stipulation" in which Miller and Oluf also joined as guardians of their mother. In substance it was that the net proceeds of the land sale should be

invested by the guardians; that the mother should have the income for life; and that at her death the principal should be distributed to the three sons and daughter.

In 1920 and again in 1921, Miller Tessum filed an account charging the guardians with the entire sum received on the sale of the farm. Oluf was not a party to these accounts. He lived a long distance from Fillmore county, where the farm was situated, the rest of the family lived and all of the business was done. He seems to have had little or nothing actually to do with the management of the trust. Finally, August 8, 1925, Miller's final account was settled. It charged him with the entire proceeds of the farm and interest thereon. See In re Guardianship of Tessum, 169 Minn. 310, 211 N. W. 316. Oluf's account has never been settled by the probate court. There is no order or judgment of that court charging him with any sum as guardian.

There is a finding that the two guardians, while in possession of the property of their ward, "wrongfully caused and permitted same to be dissipated so that said estate suffered a loss in excess of" $15,625.54; and "that said loss occurred before any of the defendant sureties were discharged from liability and while all of their bonds were actually or by legal construction in full force and effect." Miller Tessum used the trust fund as though it were his own and lost the sum stated. Oluf was held liable, not because of any active participation in the embezzlement, but solely because of his negligent failure to discharge his own duties as guardian.

Successively, Oluf filed four bonds for the faithful performance by him of his duties as guardian. In like manner Miller filed five separate and successive bonds conditioned for the faithful performance by him of his duties. When the farm was sold each filed a separate sale bond conditioned for the discharge by the guardians of their duties under the license to sell the real estate. By G. S. 1923 (2 Mason, 1927) § 8911, the discharge of the sureties upon a sale bond of a guardian upon the settlement of his annual account is provided for, but there was no such discharge in this case. The default charged against both guardians by the decision below is really

their failure to account for the proceeds of the land sale, and the sureties on the sale bonds are therefore liable. Because that liability is cumulative to that of the general bonds of the guardians (Frederickson v. American Surety Co. 135 Minn. 346, 160 N. W. 859) there is no need of distinguishing between the sale bonds and the general bonds. It is sufficient to consider the sureties in two groups, in the one those for Oluf and in the other those for Miller, plaintiff being one of the latter and as such having discharged the entire liability.

■ There is a finding that March 9, 1923, Oluf resigned and Miller "continued as sole guardian" until the death of the ward. The evidence is that March 9, 1923, the probate court made an order reciting the filing of a resignation by Oluf and purporting to discharge him "from any and all further duties and liabilities in said matter." Neither then nor thereafter was the final or any other account of Oluf examined and allowed. G. S. 1923 (2 Mason, 1927) § 8789, permits a representative to resign at any time but provides that "such resignation shall not be effectual for any purpose until the [probate] court shall have examined and allowed his final account." So his attempted resignation and discharge can be allowed no effect upon the liability of Oluf and his sureties for any default of his as guardian. The attempted discharge is void on the record and so open to collateral attack.

■ The two appeals of Oluf Tessum and his sureties, defendants Maryland Casualty Company, Aastad, Oen, Dahlen, Prichard and Loken, may be considered by themselves. That Oluf has never been found liable for any sum by the probate court is urged as an obstacle to any recovery against him or his sureties. It is argued that the matter involved is an accounting by a guardian, over which the probate court has exclusive original jurisdiction. Brandes v. Carpenter, 68 Minn. 388, 71 N. W. 402; Pierce v. Maetzold, 126 Minn. 445, 148 N. W. 302. Consideration of that point is not necessary in disposing of the case. There is no suggestion that Oluf took or had the benefit of anything not rightfully his. Miller, had he paid the entire sum which plaintiff as his surety paid, could not

recover from Oluf or his sureties. Yet the decision below charges Oluf as coguardian for the whole loss by Miller.

We consider first whether Oluf's sureties are liable to make contribution to plaintiff, a surety for Miller alone. The question must be determined from the absolute status and obligations of the parties when the bonds were given, and not on the wholly fortuitous basis of what has transpired since. There was no liability common to the two sets of bondsmen for the simple reason that one was bound only for the default of Miller and the other only for that of Oluf. That there might be a default of which the two were equally guilty, or for which at least the ward or her heirs might charge them jointly, does not make the obligation common to the two groups of sureties. Identity of certain results of the two undertakings or of some of their points of incidence does not unify their burden and spread it as a common one to all the sureties of both guardians. (Had the two guardians given a joint bond, a different question would be presented. See Newton v. Newton, 53 N. H. 537; note, 11 L.R.A.(N.S.) 306.) Our statute permitted the separate bonds (G. S. 1923 (2 Mason, 1927) § 8909). Each guardian furnished his own, his sureties assuming no responsibility for his coguardian. So there was no such common liability on the two sets of sureties as to entitle those for Miller to contribution from those for Oluf. "The right or liability to contribution does not attach to one who is not a cosurety with a surety." 32 Cyc. 277; 6 R. C. L. 1046; Young v. Shunk, 30 Minn. 503, 16 N. W. 402; National Surety Co. v. Becklund, 169 Minn. 177, 210 N. W. 882; Bankers Surety Co. v. Wyman, 141 Iowa, 574, 120 N. W. 116; Wanack v. Michels, 215 Ill. 87, 74 N. E. 84. Contribution was denied between the sureties on the separate bonds of two executors in Hewlett v. Beede, 2 Cal. App. 561, 83 P. 1086. To hold that the sureties on the separate bond of a guardian are entitled to contribution from those on the bond of his coguardian would make the sureties for the one equally so for the other in spite of the fact that the expressed obligation of each was to answer only for the principal named in the bond. In that way an expressed contractual intention would be thwarted and the

obligation of the sureties extended far beyond their undertaking.

■ The next question is whether plaintiff may recover from Oluf Tessum and his sureties through subrogation. The argument is that the judgment creditors paid by plaintiff, had such payment not been made, could have recovered from Oluf and his sureties and that plaintiff should now recover as a subrogee of that right. On that theory judgment was ordered for the full amount of plaintiff's payment against Oluf Tessum.

The general rule is that an executor, administrator or guardian is not liable for a devastavit committed by his cotrustee. Peter v. Beverly, 10 Pet. 532, 9 L. ed. 522; State ex rel. Wyant v. Wyant, 67 Ind. 25; 24 C. J. 1189; 11 R. C. L. 409. It is equally the law that by negligent inattention to his duties, by delinquency therein far short of active participation in the conversion of trust funds by a coguardian, a guardian may render himself liable. Cheever v. Ellis, 144 Mich. 477, 108 N. W. 390; annotated, 11 L.R.A. (N.S.) 296; 11 R. C. L. 410; 24 C. J. 1191, 1192; 28 C. J. 1282. Those rules deal with the liability of trustees to beneficiary.

A very different question may arise when we come to the rights or liabilities of trustees between themselves. It is settled law that "though, as respects the remedy of the cestui que trust, each trustee is individually responsible for the whole amount of the loss, whether he was principal in the breach of trust or was merely a consenting party, yet, as between the trustees themselves, the loss may be thrown upon the party on whom, as the recipient of the money or otherwise, the responsibility ought, in equity, to fall." McCartin v. Traphagen, 43 N. J. Eq. 323, 335, 11 A. 156, 162. In England relief seems to be freely granted "against a trustee who has himself got the benefit of the breach of trust." Re Partington, 57 L.T.R. (N.S.) 654, 662. "Of course where one trustee has got the money into his own hands, and made use of it, he will be liable to his cotrustee to give him an indemnity." Bahin v. Hughes, 31 L. R. (Ch. Div.) 390, 395. It follows that in a proper case the separate bond of a delinquent trustee may be enforced by and for the benefit of his cotrustee. 24 C. J. 1084. So an innocent executor who was

also a legatee was allowed to sue his guilty corepresentative on the joint and several bond of both (although by virtue of the bond both were liable to other legatees and creditors) in Municipal Court v. Whaley, 25 R. I. 289, 55 A. 750, 63 L. R. A. 235, 105 A. S. R. 890. Nanz v. Oakley, 120 N. Y. 84, 24 N. E. 306, 9 L. R. A. 223, was an action on an administrator's bond for his wrongful acts although a coadministrator was the only distributee of the estate, the plaintiff being the assignee of the latter. See also Sperb v. McCoun, 110 N. Y. 605, 18 N. E. 441, 1 L. R. A. 490; State ex rel. Wyant v. Wyant, 67 Ind. 25; Wood v. Brown, 34 N. Y. 337; Reber v. Gundy (D. C.) 13 F. 53.

As to the ward, Oluf and Miller were joint tortfeasors. But as between themselves Oluf was not a participant in the wrong. He neither joined in the tortious act nor profited therefrom. As against his brother he is within the exception to the rule that joint tortfeasors cannot have contribution, which arises "where although both parties are at fault and both liable to the person injured, yet they are not in pari delicto as to each other, as where the injury results from a violation by one of a duty which he owes to the other, so that, as between themselves, the act or omission of the one from whom indemnity is sought is the primary cause of the injury." Fidelity & Cas. Co. v. N. W. Tel. Exch. Co. 140 Minn. 229, 231, 167 N. W. 800, 801, and cases cited. So the argument for plaintiff is reduced to the anomaly that, while Oluf, paying the whole sum, would have been entitled to indemnity from Miller and the latter's sureties, yet plaintiff, one of those sureties, may shift the entire burden back onto Oluf and his bondsmen.

Subrogation is equity's method of compelling the ultimate payment by the one who in justice and good conscience ought to make it—of putting the charge where it justly belongs. Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 A. S. R. 566. It is not an absolute right but depends upon the superiority of the equities of him who asserts it over those of the one against whom it is sought. "It will never be enforced when the equities are equal or the rights not clear." Northern Tr. Co. v. Cons. Elev. Co. 142 Minn. 132, 138, 171 N. W. 265, 268, 4 A. L. R. 510.

The most claimed for plaintiff is that the equities of the two groups of sureties are equal. It is plain they are not—the sureties for Oluf have the better of that argument. But, treating the two groups as having equal equities, we are met by the proposition that subrogation depends upon superiority of equities as distinguished from a mere equality of them. "That the surety on one bond has paid the debt does not alone entitle him to step into the creditor's shoes and recover what he has expended from bondsmen on another obligation. To entitle him to do so, his equities must be superior to those of the sureties on the other bond. If * * * all are alike obligated to pay precisely the same debt, there is no basis for the subrogation of any of the creditor's rights against others. In such a case the most that can be said is that the equities are equal, —a condition of things essential to contribution, but fatal to subrogation." 25 R. C. L. 1330, citing Fidelity & D. Co. v. Bowen, 123 Iowa, 356, 98 N. W. 897, 6 L.R.A.(N.S.) 1021.

As between the guardians, Miller was liable for the entire amount. From him Oluf was entitled to indemnity. The whole liability, as between the guardians, was primarily upon Miller and secondarily upon the sureties who guaranteed his integrity. The decision below reverses that position. It transfers the burden of Miller Tessum's defalcation from those who expressly insured against it to parties who never assumed it and, for aught we know, may have expressly declined it. So we conclude that Oluf Tessum and his sureties are entitled to judgment relieving them from all liability, unless on a proper accounting Oluf is found indebted to the estate on some ground other than that of his brother's conversion or loss of the trust funds. There is some suggestion that Oluf is so indebted in a small sum for money borrowed. This decision is without prejudice to that claim. It remains for adjustment.

In reaching this conclusion we have given careful consideration to the cases holding "that the surety of a fiduciary, who has been compelled to respond to the cestui que trust for a breach of trust by his principal, is subrogated to the right of the cestui que trust as against the fiduciary and those who participated in such breach."

25 R. C. L. 1332. In that connection it is said that "thus the surety on a guardian's bond, who is compelled to make good a defalcation of the guardian, is subrogated to any right which the obligee has against one who aided in the defalcation." That rule applies where a trustee has parted with the funds or other property of the trust under such circumstances as to constitute a breach of his duties as trustee and to make the person who has taken the property a participant in the wrong. See U. S. F. & G. Co. v. Adoue & Lobit, 104 Tex. 379, 137 S. W. 648, 37 L.R.A.(N.S.) 409, Ann. Cas. 1914B, 667; National Surety Co. v. State Sav. Bank (C. C. A.) 156 F. 21, 14 L.R.A.(N.S.) 155, 13 Ann. Cas. 421. We have found no case where it has been applied in favor of the surety of a trustee against a cotrustee or the bondsmen of the latter where the cotrustee would have been entitled to indemnity from the principal of the very surety who claims the right to subrogation. In such a case there is lacking that superiority of equities essential to subrogation.

■ We come now to the appeal of defendant United States Fidelity & Guaranty Company. It became surety for Miller Tessum on a $10,000 bond approved February 24, 1923. All the other bonds were then in force except that of plaintiff, which was not approved until April 10, 1923. On the same day an order was made reciting that United States Fidelity & Guaranty Company "wishes to be released from further obligation" on its bond without mention of the concurrent filing and approval of the new $20,000 bond of plaintiff. The order was "that said above mentioned surety company [the present appellant] be and hereby is released and discharged from any further duties and liabilities in said matter." G. S. 1923 (2 Mason, 1927) § 8914, provides that the surety on a probate bond may be discharged upon the giving and approval of a "new bond * * * from liability for any subsequent act or omission of such principal." Upon application of the surety, the statute proceeds, "the court shall require the principal * * * to render and settle an account of all his prior doings." No such account was settled in connection with the discharge of this appellant. The obvious purpose of the statute, while permitting discharge of a surety "from liability

for any subsequent act or omission" of the principal, is to continue the security of the bond for all "prior doings" of the principal. Therefore we hold that the discharge of the United States Fidelity & Guaranty Company released only from liability for subsequent default of the principal, Miller Tessum. It was without effect on any then accrued for existing or past delinquency. Des Moines Sav. Bank v. Krell, 176 Iowa, 437, 156 N. W. 858.

The next argument for appellant United States Fidelity & Guaranty Company is that the decree allowing the final account of Miller Tessum adjudged him liable as for "cash in the hands of said guardian, $26,981.17," and nothing else. In other words, the argument continues, it is res judicata that the only default of Miller was his failure to turn over the cash so found in his possession upon his final accounting. That default occurred after the discharge of the United States Fidelity & Guaranty Company as surety and so, the conclusion is, it is not liable.

We cannot so restrict the decree of the probate court. From its recitals it is plain that the intention was not to find that the guardian had the cash referred to, but that he was chargeable as though he did have it; that is, if he had performed his duties properly he would have had it in hand. There are interest items aggregating $7,206.61 found to be "unaccounted for by said guardian" or "short." These findings are so worded as to imply necessarily that the guardian did not have in hand in cash the principal sum upon which interest was charged. Moreover, the order explicitly denies compensation to the "guardians because of their being guilty of wilful default, misconduct and gross negligence in the management" of their trust. Therefore, whatever it was competent for the probate court to decide, finally and in a fashion binding upon all concerned, as to the time and nature of the default by Miller Tessum, we are not able to conclude that the only delinquency charged against him was his failure to turn over upon his final accounting the property with which he was thereby charged. And we hold that in this suit between his sureties it was competent for the plaintiff to prove the actual time and nature of the defaults

which resulted ultimately in its being charged as surety for the delinquency of its principal.

The bonds of all of the sureties, including those of plaintiff and appellant United States Fidelity & Guaranty Company, were conditioned for the faithful performance by the principal of his duties as guardian. So far as the amount now involved is concerned, a part of the proceeds of the sale of the land, Miller's default occurred as early as 1920 and has continued ever since. It continued during the suretyship of appellant United States Fidelity & Guaranty Company. Dunnell, Minn. Pr. L. § 691; 24 C. J. 1060. The latter became liable therefore as surety. It was a default then existing, so there was no discharge from it by the order of the probate court of April 10, 1923.

It follows that for the breach of his duty as guardian, on account of which plaintiff, as Miller Tessum's surety, has been cast in a judgment which it has paid, appellant United States Fidelity & Guaranty Company is a cosurety with it and so liable to make contribution to plaintiff. As to the wrongdoing which resulted in the loss, they were "bound for the performance by the same principal of the same duty." It matters not that they became bound at different times and by different instruments. Young v. Shunk, 30 Minn. 503, 16 N. W. 402.

█ We cannot follow the argument that plaintiff was primarily liable for the whole sum and United States Fidelity & Guaranty Company only secondarily liable. On this question the authorities are divided, 28 C. J. 1292, the division being accounted for to some extent by differences in controlling statutes. A discussion of the cases would serve no useful purpose. Under our statute, G. S. 1923 (2 Mason, 1927) § 8914, as already appears, the discharge of a surety upon a guardian's bond is confined to future defaults of the principal. As to liability accrued at the time of the discharge, the surety remains liable without qualification. When in such a situation a new bond is given in such general terms as that of plaintiff in this case, it is merely an additional or cumulative bond and not a substitute for any already in force. To the extent therefore that

the new bond covers a default also covered by a former bond, the sureties on the two are cosureties with equal equities and entitled to contribution among themselves in proportion to the amounts of their bonds. Under our statute there was no release of appellant United States Fidelity & Guaranty Company from liability for the prior or existing defaults of its principal, Miller Tessum. Compare Brooke v. American Sav. Bank (Iowa) 223 N. W. 500. Not being discharged, it remained liable, after plaintiff's bond was approved, as a cosurety with the latter.

In view of the conclusion we have reached, there is no occasion to differentiate between that portion of the fund in the hands of the guardians which belonged to the ward in her own right and that which was placed in the custody of the guardians under the provisions of the stipulation or contract which is referred to in our statement of the facts. By the order allowing his final account, Miller Tessum was charged as guardian with the entire sum. That order is an adjudication binding upon his sureties. Lyngen v. Tessum, 169 Minn. 304, 211 N. W. 314.

It follows from the foregoing that the order appealed from must be reversed and the case remanded for further proceedings not inconsistent with the views expressed in this decision.

So ordered.

UPON APPLICATION FOR REARGUMENT.

On December 27, 1929, the following opinion was filed:

STONE, J.

■ Plaintiff's petition for a rehearing suggests that appellants Dahlen, Prichard and Loken may be cosureties with it because of the sale bond which they executed as sureties with Oluf Tessum as principal. Each guardian filed a sale bond. That of Miller Tessum (exhibit B) recites that "we Miller Tessum as principal, and B. H. Cummings and James O'Hara as sureties, are held and firmly bound," etc. The bond of Oluf Tessum (exhibit G) provides that "we, O. Tessum as principal, and Henry S. Dahlen, W. W.

Prichard, Sr., and Halvor Loken as sureties, are held and firmly bound," etc. Each bond is conditioned as follows:

"Now, Therefore, if the said O. Tessum and Miller Tessum shall justly and faithfully discharge their duties under said order of license, and shall justly and truly account for and pay over according to law and according to said stipulation [referred to in the former opinion at p. 497] all moneys received on account thereof, then this obligation shall be void, otherwise it shall remain in full force and virtue."

Notwithstanding this statement, the conclusion is inescapable that each bond is the separate obligation of the principal who signed it, together with his sureties, and that neither is the joint bond of the two principals.

It is all a matter of intention. If sureties see fit to bind themselves without the signature of their principal they may do so. Van Norman v. Barbeau, 54 Minn. 388, 55 N. W. 1112; Safranski v. St. P. M. & M. Ry. Co. 72 Minn. 185, 75 N. W. 17. But here the contrary intention is very evident immediately the two bonds are applied to their subject matter and considered, as they must be, in the light of the circumstances of their execution and filing with the probate court. Both bear date of August 16, 1919. Both were approved by the probate court September 6, 1919. Each names one of the guardians as principal, thereby preventing the implication that the one not named is a principal also. The mere execution of the separate bonds, their simultaneous filing and approval, strongly reinforce the conclusion that each was intended as the separate bond of the guardian and sureties who signed with him and that neither bond (notwithstanding language therein which, standing alone, might be so considered) was intended to be the joint obligation of both guardians. It is plain that for a default chargeable solely to one guardian under his sale bond there could be no cause of action against the sureties on the other sale bond wherein the only principal was the innocent guardian. State v. Austin, 35 Minn. 51, 26 N. W. 906; Martin v. Hornsby, 55 Minn. 187, 56 N. W. 751; Bjoin v. Anglim, 97 Minn. 526, 107 N. W. 558; School Dist. No. 80 v. Lapping,

100 Minn. 139, 110 N. W. 849, annotated, 12 L.R.A. (N.S.) 1105. The sureties on the two bonds were not cosureties.

Plaintiff's petition for rehearing is denied.